SALT LAKE CITY BREWING COMPANY, a Corporation, Appellant, v. WILLIAM HAWKE and WILLIAM ANDREWS, Co-Partners as HAWKE & ANDREWS, Respondents.

No. 1330.    (66 Pac. 1058.)

1. **Partnership: Authority of Partner: Contracts: Firm Liability: Implied Authority of Partner.**
The managing partner of a firm of two, engaged in the saloon business, informed his partner, a few days before a pay day at a neighboring mine, that the firm would need money to cash miner's checks on pay day, and that he would send to the brewery, with which they dealt, for the money. The other partner objected to sending for the money, but did not notify the brewery not to send it, and subsequently the managing partner wrote over his own name to the brewery, ordering certain goods and the money, which was sent. A month previous the firm had procured money from the brewery for the same purpose, through the managing partner, and with the knowledge of the other. *Held*, that the order for the money was within the scope of the managing partner's authority, and the other partner was liable therefor.

**2. Same: Good Faith of Partner.**

A partner in a trading partnership may enter into any contract for the firm in its ordinary trade and business; and, as between the firm and those dealing with it in good faith, it is not material whether such partner is acting fairly with his co-partners, so long as he is within the scope of the firm's business.

**3. Same: Sufficiency of Signature to Bind Firm.**

Where a transaction of one partner is for the firm, and within the general or apparent scope of the partnership business, it is of no consequence that the writing evidencing the transaction is signed with the name of the individual partner alone.

**4. Same: Evidence: Hearsay: Self-Serving Declarations.**

Where the issue was whether a member of a firm was liable for money secured by another partner, it was error to permit a witness to testify that, after it was discovered that the partner who had secured the money had absconded with the same, he had heard the other partner say that he was not responsible for the money, and had nothing to do with it; such testimony being hearsay, and the statement a self-serving declaration.

(Decided December 13, 1901.)

Appeal from the Fifth District Court, Beaver County.— *Hon. John E. Booth,* Judge.

Action to recover money loaned and for goods sold and delivered. From a judgment holding defendant Hawke alone liable for certain moneys advanced by plaintiff, the plaintiff appealed.

REVERSED SO FAR AS APPEALED FROM.

*Messrs. Powers, Straup & Lippman,* and *William F. Knox, Esq.,* for appellant.

It is almost an elementary principle that, in case of commercial or trading partnerships, each partner has undoubted authority to pledge the partnership property, or borrow money for partnership purposes, or do any act incident or appropriate

to the firm's business, according to the usage of such trade or business. Whoever associates with another for the purpose of carrying on business or trade, confers on him, as to third persons, who are not notified to the contrary, and who deal with him fairly and in good faith, authority to bind the partnership by contracts or engagements usually incident to the business in which the firm is engaged. Hoskinson v. Eliot, 62 Pa. St. 393; Dowling v. Exchange Bank, 145 U. S. 512; Randall v. Meridith, 76 Tex. 669; Holt v. Simmons, 16 Mo. App. 97; Wagner v. Simmons, 16 Ala. 143; Pahlman v. Taylor, 75 Ill. 629; Walsh v. Lennon, 98 Ill. 27; Sandheim v. Gilbert, 117 Ind. 71; Wiley v. Stewart, 122 Ill. 545; Wiley v. Thompson, 23 Ill. App. 199; Seekeel v. Fletcher, 53 Iowa 330; Smith v. Collins, 115 Mass. 388; McDonald v. Clough, 14 Pac. 121; In re Ketchem, 1 Fed. Rep. 815; Dammon v. Beecher, 32 Pac. 573; Right Rem. and Prac. (Lawson), par. 643, p. 1210; Vol. 2, Rem. and Prac., pars. 645, 646, 647.

*Elmer E. Corfman, Esq.,* for respondents.

It is the established practice of this court, that where the evidence is at all conflicting the court is not warranted in reversing the judgment of the lower court on the ground of "the unsufficiency of the evidence to support the judgment." Forman v. Bateman, 2 Utah 268; Slater v. Cragan, 7 Utah 412; Larsen v. Onesite, 21 Utah 38.

### STATEMENT OF FACTS.

This action was brought to recover money loaned and for goods sold and delivered. It was alleged in the complaint, and admitted in the answer of the defendant Andrews, that the defendants were, at the time of the transaction out of which this controversy arose, co-partners doing business under

the firm name of Hawke & Andrews. From the evidence it appears, in substance, that the defendants became partners on June 13, 1900, and conducted a saloon business at Frisco, Utah; that Hawke, who had been in that business previously, was the managing partner, bought all the supplies, and generally conducted the affairs of the business; that pay day at the Horn silver mine occurred on the twentieth of each month; that on such pay days the saloons, same as other business establishments, would in the course of business, cash checks of employees of the mine; that in July, 1900, just previous to the pay day, Hawke applied by letter to the plaintiff for $1,000; and that by letter dated August 14, 1900, Hawke again applied for $500, and also in the same letter gave an order for goods. Referring to the request for money made in July, the witness Jacob Israel, agent of plaintiff, in the course of his testimony said: "I had $1,000 sent down by the brewing company to Frisco, and I received it and took it into the saloon of William Hawke and Andrews. When I got in there, I gave half of the money—that is all he wanted—to Hawke. While we were standing there, he says: 'This is Mr. Andrews. This is my partner.' William Hawke made this statement. He says he did not want his name in the name of the firm, because he did not want his name known in Salt Lake. 'That is the reason I am having the money in my own name.' He wanted the money to cash checks— checks from the miners from the Horn silver mine, I presume. This conversation took place in their place of business. . . The request came in the usual way, and I took the money down. I did not cash any checks myself. Mr. Hawke and Mr. Andrews handled the money. I did not see either of them cash the checks. When I delivered the money to Mr. Hawke, Andrews was standing there behind or in front of the bar, and he came in with Hawke to the counter right there. I gave Hawke $500, and Andrews was within two or three feet from him when I gave him the money, and he saw me give

it to him. Hawke said, 'That will be enough for the time being to cash the checks,' and Andrews heard what he said. I reported the fact that Hawke had introduced Andrews to me as his partner to Mr. Moritz, the manager of the brewery." As to this same transaction the defendant testified: "I have heard the testimony of Mr. Israel in regard to $1,000 being sent there in July, but I do not remember that circumstance. I remember the Salt Lake Brewing Company's man having come there on that day. I saw that man come in, but I never saw the money. I do not know anything about those checks, whether they were paid off. I did not see them paid. I did not see them paying any checks that day. I saw Mr. Israel there in the house. I saw him in the house. I was behind the bar that day. I see that Israel had checks. I saw he has got checks, and he leave that evening. And he had checks when he leave that evening. And I saw William Hawke give him the checks." The letter of August 14, the one resulting in this suit, reads as follows: "Frisco, Utah, August 14, 1900. Salt Lake Brewing Company: Please send me on the eighteenth of month $500 by Pacific Express. Make $50 in silver. As there is no train on the twentieth, the money must leave night of eighteenth to reach here the night of the nineteenth, and I will forward checks to you on the twenty-first. Ship by express on the eighteenth two barrels of bottled beer. William Hawke." It is shown that neither of the defendants could write, and that the letter was signed by Hawke with his stamp; the letter having been written by William McHale, who, concerning the same, in part testified: "I wrote that letter for William Hawke to the Salt Lake Brewing Company on that date. Mr. Hawke called me from the street into his saloon, and asked me to write such a letter. Andrews was with him, I think. He asked me to write what I put in there, but at this time Andrews got up and went out." The $500 mentioned in the letter were sent by the plaintiff on the eighteenth of August, 1900, and were re-

ceived by Hawke, who thereafter left the country. One check which Hawke cashed on the morning of the twentieth of August appears in full in the abstract. Respecting this, the witness Olsen, who had the check cashed, testified: "I got it cashed by Hawke. He said he had gotten some big money from Salt Lake. I am a merchant in Frisco. On pay day there are a good many checks in circulation, and then all the business men have to have money to cash checks to a certain extent in order to collect their bills. The merchants there have to have money to cash checks." The witness A. N. McLeod, concerning this last transaction, testified: "I remember the circumstance of William Hawke leaving Frisco last fall. At that time I had a conversation with the defendant here, William Andrews, in regard to this matter. He said the money came there, and it was used to cash checks, and he did not consider he was responsible for it, for William Hawke sent for it. I told him Hawke had skipped with this money, and he could not be found. 'Well,' he says, 'the money was used in the business to cash checks,' and he says, 'I don't consider I am responsible, because William Hawke sent for it.'" The witness Israel stated: "I remember the time that I went to Frisco, about the twenty-eighth of August last year. I saw McLeod there. I saw the defendant Andrews there, and had a talk with him. Andrews said that he was responsible for that $500. I would not like to state whether he said he had gotten it or not, as it has slipped my memory; but I rather think he said that he didn't." As to this transaction the defendant Andrews testified, among other things, as follows: "About the fifteenth day of August I had a talk with Hawke about getting money from the Salt Lake Brewery Company to cash checks. He say, 'I guess we have to have some money to pay day.' And I tell him that time we didn't want no money this pay day. We didn't want money, because small pay day, on the Fourth of July being—. I do not know of Hawke ever getting any. The

first I learn that he got money was when McLeod came with the telegram. Then I hear that he has got the money, $500. I heard McLeod testify. I did not tell him, when he came there to take possession, that we used the money in cashing checks. I did not tell him anything of that kind. . . . It is a fact that the Horn silver mine has a pay day on the twentieth of the month. When any of the boys owe us money, they come in and get their checks cashed; then generally, of course, pay us. We have to have money which to cash with on pay day, and we need the money to cash checks with. . . . I did not see William McHale write a letter in the saloon. I did not write to the Salt Lake Brewery and say not to send any money. I thought I would not be responsible for it." Under this and other similar testimony, the court, sitting without a jury, found and held that the defendants were both liable for the value of the goods ordered in the letter of August 14, but that the defendant Andrews was not liable for the money loaned because of the same letter. A judgment was entered accordingly, and this appeal is from that part thereof holding the defendant Hawke alone liable for the money loaned.

BARTCH, J., having stated the case as above, delivered the opinion of the court.

On this appeal the first assignment of error relates to the fourth finding of fact, which reads: "That on the eighteenth day of August, A. D. 1900, at Frisco, Beaver county, State of Utah, the said defendant William Hawke had and received of the money of the plaintiff the sum of $500; that the said sum of $500 had and received from the plaintiff by the said defendant William Hawke was obtained by the said defendant William Hawke for his sole and individual use, and without the knowledge or consent of the defendant William Andrews; that the said defendant William Andrews, and the firm of Hawke & Andrews, received no

benefit whatever therefrom, and no part of said sum of $500 was procured for or received by the said defendant William Andrews, or the said firm of Hawke & Andrews." The appellant contends that this finding is neither justified nor supported by the proof, and upon careful examination of all the evidence the conclusion seems irresistible that such contention is well founded. It is difficult to see by what process of reasoning, from the facts and circumstances in evidence, the court found that the firm was liable for the goods, but only one member thereof for the money, when both the goods and the money were ordered by the same person, at the same time, and in the same way, and evidently for use in the business. The defendant Andrews himself testified that Hawke, who sent the letter containing the order for the goods and money, was the managing partner, bought the goods, and generally ran the business of the firm; that Hawke, but three days previous to the pay day at the Horn silver mine, had told him that they needed money in the business on pay day, and he would send to the plaintiff for it; and that he objected to him procuring the money, but failed to notify the plaintiff not to send it, offering as the only excuse for not giving such notice that he thought he would not be responsible for it. Thus from this testimony a reasonable inference would seem to be that Hawke ordered the money for the use of the firm, and that Andrews was after all not inclined to interfere, so as to prevent the procuring of it, because he would not be liable for its repayment. It can hardly be said that this was dealing fairly with the plaintiff. Again, it is shown in evidence that it was usual for business concerns in Frisco to cash checks on pay day, and that on the previous month the firm procured money from the appellant for the same purpose, and procured it in the same way, by the same partner, with the knowledge of the respondent, and, so far as appears, without any objection thereto by him, and that such checks were cashed with the money in his presence and with his knowl-

edge. Doubtless, in the judgment of the managing partner, the firm needed the money over which this controversy arose to cash checks for the miners who patronized the saloon. From the facts and circumstances shown by the evidence, it seems clear that Hawke had implied authority to transact all the legitimate business of the firm, and to bind the firm within the scope of such business, and that the firm was bound by the transaction in controversy. The law is well settled that, in a trading partnership, a partner may enter into any contract or engagement for the firm in its ordinary trade and business, and may buy, sell, or pledge goods, borrow money, or do any other acts incident or appropriate to such business, according to the ordinary course or usages thereof, and, as between the firm and those dealing with it in good faith, without notice, it is not material whether or not such partner is acting fairly with his co-partners in a particular transaction, so long as he is acting within the scope of the firm's business and of his authority. When, therefore, as is indicated by the evidence in this case, money is borrowed by one member of a firm on the credit of the firm, according to the usual course of its business, and within the general scope of its authority, the partnership is liable therefor. Hoskinson v. Eliot, 62 Pa. 393; Pahlman v. Taylor, 75 Ill. 629; Randall v. Merideth, 76 Tex. 669, 13 S. W. 576; Rich v. Davis, 4 Cal. 22; Smith v. Collins, 115 Mass. 388; Dowling v. Bank, 145 U. S. 512, 12 Sup. Ct. 928, 36 L. Ed. 795. Nor, where a transaction of one partner is for the firm and within the general or apparent scope of the partnership business, is it a matter of any consequence that the writing evidencing the transaction is signed with the name of the individual partner only. Reynolds v. Cleveland (N. Y.), 15 Am. Dec. 369; Muldon v. Whitlock, 1 Cow. 290, 13 Am. Dec. 533; Schemerhorn v. Loines, 7 Johns. 311. From the foregoing considerations we conclude that the finding in question is the result of such a manifest oversight or mistake on

the part of the court, as to the proof, that it can not be upheld.

The appellant also insists that the court erred in permitting the witness Olsen to testify, over the objection of the plaintiff, as follows: "Q. I will ask you if you heard anything said by the defendant Andrews to McLeod, after McLeod had taken possession of the premises there, and, if so, what? A. Andrews told McLeod to let him in his house, but he would not do so until I told him. Then he went and opened it. I didn't think he had a right to close him out, I said, according to law; and Andrews said: 'I am not responsible for that money. I did not have anything to do with it. I did not know anything about it. You have wronged me. I don't know anything about it.' " We are of the opinion that the admission of this testimony was prejudicial error. It was clearly hearsay, and the statement of the defendant Andrews at that time, after he found that there would be an attempt made to hold him liable for the money borrowed by his partner, was simply a self-serving declaration, and was not admissible in evidence for any purpose.

Because of the errors complained of herein, the judgment, in so far as it was appealed from, must be reversed, and the case remanded, with directions to the court below to grant a new trial as to such portions of the judgment. The respondent is to pay the costs of this appeal. It is so ordered.

MINER, C. J., and BASKIN, J., concur.