## J. J. CRABLE & SON v. O'CONNOR.
### (No. 715.)

APPEAL AND ERROR—CONFLICTING EVIDENCE—SUFFICIENCY OF EVI-
DENCE—PARTNERSHIP—PAROL EVIDENCE THAT CONTRACT OF PART-
NER WAS PARTNERSHIP CONTRACT—ADMISSIONS BY PARTNER—AT-
TACHMENT—MOTION TO QUASH WRIT—MOTION TO STRIKE PART OF
AFFIDAVIT—PRACTICE—APPEAL BOND—STAY OF EXECUTION.

1. In an action to recover from a partnership the rent of certain
teams of horses and mules, the evidence examined and
held sufficient to justify a finding that the contract relied on
by the plaintiff was made for the benefit of the partner-
ship, although made in the name of and signed by one
partner.

2. The trial court having found that the teams were leased
for the partnership and for its benefit, and there being a
conflict in the evidence on the subject, the finding of the
court will not be disturbed on error, it appearing that the
evidence is sufficient to justify the finding.

3. It is competent to show by parol evidence that a party who
is named in and has signed a contract as one of the parties
thereto was an agent for another, and acted as such agent
in making the contract, so as to give the benefit of the
contract to, and charge with liability, the unnamed prin-
cipal, whether the unnamed principal was or was not dis-
closed or known to the other party to the contract at the
time it was made. And this rule applies to a contract made
and executed by one partner, when acting for the firm
and within the scope of the partnership business.

4. Where the fact of a partnership is shown by other evidence,
the conversations between the parties to a contract are
admissible to show that although made in the name of and
signed by one of the partners, it was made for the benefit
of the partnership.

5. It would not be proper to strike out statements contained
in an affidavit for attachment, upon a motion alleging that
the statements are immaterial or disclose no ground for
attachment; *so held* where a motion was made to strike
out a statement of the non-residence of one of the de-
fendants.

6. A judgment having been entered for the plaintiff, in an
action wherein the property of the defendants had been
attached, an order was entered after judgment upon the
application of the defendants that upon their giving bond
as provided by law for stay of execution in a sum fixed

by the order, to be approved by the clerk of the court, execution should be stayed for a stated period as to the parties giving the bond, and that the attached property be released, the order providing that such bond should be given under the statute relating to appeals; the bond was given and the attached property released. *Held,* that without anything appearing in the record to show that the bond was merely a forthcoming bond, it was the privilege and duty of the court to assume that it was a bond authorized by the said order of the court, viz.: a bond to stay execution pending proceedings in error, obligating the parties to pay the judgment if affirmed, thereby taking the question as to the validity of the attachment or the correctness of the ruling of the court refusing to quash it out of the case, the attachment being unnecessary to give the court jurisdiction of the person of either of the defendants, the personal appearance of each of them having been entered in the cause.

[Decided June 30, 1913.]                    (133 Pac. 376.)

ERROR to the District Court, Big Horn County, HON. CARROLL H. PARMELEE, Judge.

The material facts are stated in the opinion.

*James M. Workman* and *William C. Snow,* for plaintiffs in error.

Parol evidence is inadmissible to contradict the terms of a written instrument. (21 Ency. Law, (2nd Ed.) 1078.) Such evidence is inadmissible to show that a third party is interested in the contract as a partner, thereby contradicting the terms of the instrument. (Chambers v. Brown, 69 Ia. 213, 28 N. W. 561.) The parol admission of a party made *in pais* is competent evidence only of the facts which may be lawfully established by parol evidence. (Greenleaf on Ev., Sec. 203; 1 Ency. L. (2nd Ed.) 716.) A person contracting with an agent, who has full knowledge of the principal, but extends credit to the agent exclusively, cannot thereafter resort to the principal, and the latter is not bound, although the agent acted in the course of his employment and for the benefit of his principal. (31 Cyc.

1570; Ford v. Williams, 62 U.'S. 287, 16 L. Ed. 36; 1 Ency. L., (2nd Ed.) 1138; Henderson v. Mayhew, 2 Gill. (Md.) 393, 41 Am. Dec. 434; Peterson v. Roach, 32 O. St. 374, 30 Am. Rep. 607; Holmes v. Burton, 9 Vt. 252, 31 Am. Dec. 621; Mechem on Agency, Sec. 558. ) The usual and decisive indication of an exclusive credit to the agent is where the creditor knows that there is a principal, but makes the charge against the agent. It is a question of intention. (Taintor v. Prendergast, 3 Hill, 72, 38 Am. Dec. 618; 1 Bates on Partnership, Sec. 446-447; 22 Ency. Law, (2nd Ed.) 163; Mechem on Agcy., Sec. 446.) Agency cannot be proved by the declarations of the one assuming to act as agent. (1 Ency. L., (2nd Ed.) 690; Mechem on Agcy., Sec. 100; Blake v. Bremyer, 84 Kans. 708, 115 Pac. 538.) One dealing with an agent as principal who afterwards discovers the concealed principal may then elect to hold one or the other, but he cannot hold both, and such election must be within a reasonable time after discovering the principal. (Mechem on Agcy., 698, 699; 1 Ency. L., (2nd Ed.) 1139; Gay v. Uren, (Minn.) 26 L. R. A. 742.) The fact that a partnership has received the benefit of merchandise purchased by one partner on his individual credit does not entitle the creditor to look to the firm for payment unless the partner acted as agent in making the purchase. (22 Ency. L., (2nd Ed.) 164; 1 Bates on Partnership, Sec. 446.) The acceptance of a note of an individual with full knowledge of the firm or principal discharges the latter. (Paige v. Stone, 10 Metc. (Mass.) 160, 43 Am. Dec. 420.) Where at the time of dealing with an agent the principal is not concealed, the act of giving credit to the agent constitutes an election. (Morrell v. Kenyon, 48 Conn. 314, 40 Am. Rep. 174; 1 Ency. Law, (2nd Ed.) 1139, note 1.)

The testimony of the attorney who drew the contract was inadmissible because it contradicted the written instrument, and also because agency cannot be shown in that manner so as to bind the partnership who was not named in and did not sign the contract. The plaintiff was not entitled

to recover against the partnership for the reason that when he signed the contract he had full knowledge of the partnership and elected to give credit to the partner with whom he contracted. The evidence, we think, establishes that the teams were leased by E. A. Crable individually and upon his own responsibility, and not for the firm.

The court erred in overruling the motion to quash the writ of attachment. There is no evidence to sustain any of the allegations of the affidavit concerning fraud. The allegation that one of the defendants, J. J. Crable, was a non-resident, afforded no ground for attachment. No claim was made against him as an individual. The partnership was a resident of the state, notwithstanding the fact that one of its members was not. The firm was doing business and one of the partners resided here, and the property was attached as the property of the firm, and it was shown that it belonged to the firm.

*C. A. Zaring* and *Thomas M. Hyde,* for defendant in error.

The testimony of the attorney who drew the contract was competent to show that E. I. Crable when he signed the contract was acting as a member of the firm of J. J. Crable & Son, and for their benefit. Parol evidence is admissible to show the capacity in which a person acts, the actual relation of parties to a writing, and that persons not named therein are in fact interested. (Jones on Ev., (2nd Ed.) par. 452 and cases cited; Curran v. Holland, 75 Pac. 46; Exchange Bank v. Hubbard, 62 Fed. 116.) A written contract is binding on a firm, although signed by one of the partners only instead of in the firm name, when it is shown that it was made in a firm transaction and intended as an obligation of the partnership. (30 Cyc, 485; Brewing Co. v. Hawke, (Utah) 66 Pac. 1058.)

In the affidavit supporting the motion to quash the attachment the averment that J. J. Crable was a non-resident of the state was not denied. Upon a motion to dissolve an attachment on the ground that the allegations in the affidavit

for attachment are untrue all of the allegations must be traversed. (Bank v. Latham, 8 Wyo. 316.) The court therefore properly overruled the motion to dissolve the writ.

POTTER, JUSTICE.

The defendant in error was plaintiff in the court below and brought this action against J. J. Crable, E. I. Crable and J. J. Crable & Son, plaintiffs in error here, to recover a sum of money alleged to be due as rent for certain teams delivered to J. J. Crable & Son by the plaintiff pursuant to a written contract set out in the petition as follows:

"This agreement made this 5th day of September, 1910, between Pat O'Connor, of Thermopolis, Wyoming, party of the first part, and E. I. Crable of Thermopolis, Wyoming, party of the second part.

"Witnesseth, that the said party of the first part, for and in consideration of the agreements hereinafter contained, to be kept and performed by the party of the second part, does hereby lease unto the party of the second part eleven two-horse teams composed of horses and mules, for and during three months from date hereof.

"And the party of the second part, for and in consideration of the agreements herein contained by the party of the first part, does hereby agree that he will pay the said party of the first part for the use of said property the sum of $330 per month, same being $30.00 per team, that he will keep the said mules and horses well fed and well cared for and in a first-class and healthy condition, and that he will exercise every care and diligence in the proper care of the same; that he will pay the value of all animals lost, destroyed or injured in any way by reason of his negligence or the negligence of his employees, and that at the termination of this lease he will re-deliver the said property to the party of the first part at Thermopolis, Wyoming, in as good condition as when received by him.

"It is further understood and agreed that the said rental shall be due and payable by the second party to the first party on the 25th day of each month hereafter.

"In witness whereof the parties hereto have hereunto set their hands and seals this 5th day of September, 1910.

"PAT O'CONNOR.

"E. I. CRABLE."

The petition alleges that J. J. Crable & Son is a partnership composed of J. J. Crable and E. I. Crable; that the defendant E. I. Crable, while acting as a member of said firm, entered into the said contract with the plaintiff for and in behalf, and for the use and benefit, of said partnership; that pursuant to the contract the plaintiff delivered to said firm of J. J. Crable & Son eleven teams, "which were thereupon taken to a certain railroad grade between Scribner and Fromberg, Montana, and there used for a period of about three months by said J. J. Crable & Son in working upon their contract in the construction of a certain grade between the places above mentioned." That subsequent to the execution of the contract it was adopted and ratified and the proceeds and benefits thereof were taken and enjoyed by said firm. The petition contains an itemized statement of the amount claimed to be due for the rental of said teams, showing that amount to be $1,136.25, and also a statement of additional items amounting to $79.35, including charges for rent of three carts, and certain property claimed in the testimony of the plaintiff to have been delivered with the teams and not returned, making a total alleged indebtedness of $1,215.60, on which a credit of $212.75 is allowed by the petition for hay furnished the teams, explained in plaintiff's testimony to be for hay furnished after defendants had ceased to use the teams, the net amount alleged to be due, and for which judgment is prayed, being $1,002.85.

An answer was filed by E. I. Crable admitting the execution of the written contract and that he is indebted to the plaintiff under the same in the sum of $990, and denying each and every other material allegation in the petition. He alleged by way of set-off that the plaintiff was indebted to him in the sum of $80.30 for the care and feed of the teams

after the written contract had expired. J. J. Crable filed an answer denying each and every material allegation in the petition. J. J. Crable & Son filed a separate answer alleging that at the time the contract was entered into between the plaintiff and E. I. Crable the partnership existing between the latter and J. J. Crable had been dissolved by mutual consent, and denying each and every other material allegation of the petition. Replies were filed denying the new matter contained in the separate answers. The case was tried to the court, without the intervention of a jury, whereupon the court found that the plaintiff should have and recover of the defendants and each of them the sum of $1,073.30, and entered judgment for that amount, together with costs. It appears that an order of attachment had been issued in the cause and that certain horses and mules were attached as the property of J. J. Crable & Son. Motions to dissolve the attachment were filed, and they were heard at the same time the cause was tried upon its merits, and the judgment entry embraced an order that the motions to dissolve the attachment be overruled, and that the attached property be sold by the sheriff as under execution. It was further ordered by the judgment that the sheriff exhaust the property in his hands belonging to the partnership before proceeding against the individual property of the defendants. A motion for a new trial was filed and overruled, and the case is here upon a petition in error, assigning error in overruling the motions to dissolve the attachment and the motion for a new trial.

Parol evidence was admitted, over the objection of the defendants, to sustain the averments of the petition to the effect that in making the contract with the plaintiff for the lease of the teams E. I. Crable acted as a member of and for the firm of J. J. Crable & Son, and that it was in fact a partnership contract. It is contended that this ruling was error for the reason that it violated the principle that parol evidence is inadmissible to vary or contradict the terms of a written instrument. It is unnecessary to rehearse all the

testimony on that subject, which to some extent is conflict-
ing. The plaintiff testified in substance, concerning the
making of the contract, that he knew the firm of J. J. Crable
& Son and the business conducted by the firm; that E. I.
Crable was a member thereof, and that the other member
was his father, J. J. Crable, and that the firm had a contract
for construction work on the railroad grade mentioned in
the petition. That he had done business with the firm prior
to the making of this contract, having loaned them some
money when they were engaged in other construction work;
that he rented the teams for E. I .Crable and his father to
work on the contract they had on the Frannie-Fromberg
cutoff. That J. J. Crable was not at the time in Ther-
mopolis, where the contract was made, but that he was up
on the construction work, and Ed came down to get the
teams, "to make arrangements to get them." He testified
specifically with reference to renting the teams, after re-
ferring to the contract of J. J. Crable & Son on the said
railroad grade, "I was renting them to the Crables for that
contract. I knew he and his father had a contract up on
the cutoff. And I rented them for that work." He also
testified, as well as the attorney who drew the contract,
concerning the directions given respecting it and the parties
to it, the effect of their testimony being that the teams were
to be leased to J. J. Crable & Son. The matter was ex-
plained by said attorney as follows:

"Mr. O'Connor and Mr. E. I. Crable met me one morning
in front of my office, and Mr. O'Connor said they wanted
me to draw up a little memorandum for them, and the con-
versation was to this effect: That Mr. O'Connor wished to
rent certain horses and mules to the firm of Crable & Son
—I cannot state the initials or the name of the other Crable.
* * * I informed them that the best way for them to
execute this contract was to have all the parties involved
sign the contract; that is, all the members of the partner-
ship. They explained to me there was a partnership.
* * * That the other member of the firm was absent and

could not sign at that time, that they wanted this deal closed at once, or they wanted it fixed up, so I understood. I told them if it suited them that way it was all right with me, and therefore I drew the contract." He further testified that he thought it was not drawn on that day, but probably the next day, and that he drew it in accordance with the conversation the parties had with him.

It was shown that the teams were taken to the railroad grade referred to and that some of them were used on the firm's construction contract, with the knowledge of J. J. Crable, who also seems to have known of the contract with plaintiff, and that others were hired out to brothers of E. I. Crable, mostly for use on other portions of the grade. E. I. Crable, maintaining that he alone made the contract with plaintiff, testified that he rented the teams which he did not use to his brothers. It may be said here that if the teams were rented by him for the firm, his act in subletting them may also have been for the firm. It is not disputed that as to the construction work in which E. I. Crable was then interested, a partnership existed between him and his father, J. J. Crable, under the firm name and style of J. J. Crable & Son. Indeed, they testified that the partnership continued as to that work, but that prior to the making of this contract with plaintiff the partnership had been dissolved, so far as the partnership property was concerned, E. I. Crable having surrendered his interest in that property to his father. There was no proof of any other work or business conducted by either J. J. Crable or E. I. Crable during the time they worked on this grade, or the time for which the teams in question were rented or used. Counsel for defendants contend not only that plaintiff's evidence on the subject of the parties to the contract was inadmissible, but that "the effect of this testimony is not to show that Crable acted as agent for the firm when he signed, but to show that the parties at the time of ordering the contract drawn intended to have it run to the partnership," and that "what the parties did, however, was to make a contract run-

ning to the individual." And counsel contend that there is nothing in the testimony to contradict the presumption that the contract correctly represents the intention of the parties when it was signed. The court must have found that the teams were leased for the partnership and for its benefit, and there being a conflict in the evidence we cannot, under the familiar rule, disturb the court's finding, for we are satisfied that the testimony above recited, with the other evidence in the case relating to the matter, is sufficient to justify the finding.

The law is well settled, both in England and this country, that it is competent to show by parol evidence that a party who is named in and has signed a contract as one of the parties thereto was an agent for another, and acted as such agent in making the contract, so as to give the benefit of the contract to, and charge with liability, the unnamed principal; and this is so, whether the unnamed principal was disclosed or known to the other party to the contract at the time it was made or not, although there is an occasional opinion to the contrary where the unnamed principal was known to the other party at the time. (Higgins v. Senior, 8 M. & W., 834; Jones on Ev., (2nd Ed.) Sec. 452; 9 Ency. of Ev., 404-405; Story on Agency, (7th Ed.) Sec. 270; 4 Wigmore on Ev., Sec. 2438; Curran v. Holland, 141 Cal. 437, 75 Pac. 46; Briggs v. Partridge, 64 N. Y., 357, 21 Am. Rep. 617; Byington v. Simpson, 134 Mass. 169, 45 Am. Rep. 314.) It is said in Story on Agency: "There is no doubt that parol evidence is admissible, on behalf of one of the contracting parties, to show that the other was an agent only in the sale, although contracting in his own name, so as to fix the real principal. It has been well observed that, in cases of this sort, the liability of the principal depends upon the act done; and not merely upon the form in which it is executed. If the agent is clothed with the proper authority, his acts bind the principal, although executed in his own name. The only difference is that, where the agent contracts in his own name, he adds

his own personal responsibility to that of the principal, who has employed him."

In the section in Wigmore on Evidence, above cited, the general state of the law on the subject is said to be sufficiently outlined in the following passage quoted from the decision of Wolverton, J., in Barbre v. Goodale, 28 Or., 465, 38 Pac. 67, 43 Pac. 378: "The question is here presented whether it is competent to show by parol testimony that a contract executed by and in the name of an agent is the contract of the principal, where the principal was known to the other contracting party at the date of its execution. There are two opinions touching the question, among American authorities—the one affirming, and the other denying; but the case is one of first impression here, and we feel contsrained to adopt the rule which may seem the more compatible with the promotion of justice, and the execution of honest and candid transactions between individuals. The English authorities are agreed that parol evidence is admissible to show that a written contract executed in the name of an agent is the contract of the principal, whether he was known or unknown; and the American authorities are a unit, so far as the rule is applied to an unknown principal, but disagree where he was known at the time the contract was executed or entered into by the parties. All the authorities, both English and American, concur in holding that, as applied to such contracts executed when the principal was unknown, parol evidence which shows that the agent who made the contract in his own name was acting for the principal does not contradict the writing, but simply explains the transaction; for the effect is not to show that the person appearing to be bound is not bound, but to show that some other person is bound also. And those authorities which deny the application of the rule where the principal was known do not assert or maintain that such parol testimony tends to vary or contradict the written contract, but find support upon the doctrine of estoppel; it being maintained that a party thus dealing with an agent of a known

principal elects to rely solely upon the agent's responsibility; and is therefore estopped to proceed against the principal. The underlying principle, therefore, upon which the authorities seem to diverge, is the presumption created by the execution of the contract in the name of the agent, and the acceptance thereof by a party, where the principal is known. Is this presumption conclusive, or is it disputable? Without attempting to reconcile the decisions, we believe the better rule to be that the presumption thus created is a disputable one, and that the intention of the party must be gathered from his words, and the various circumstances which surround the transaction, as its practical effect is to promote justice and fair dealing. The principal may have recourse to the same doctrine to bind the party thus entering into contract with his agent. Parol evidence, however, is not admissible to discharge the agent, as the party with whom he has dealt has his election as to whether he will hold him or the principal responsible."

Where it was known at the time that a party contracted as the agent of another, the rule was applied in Byington v. Simpson, *supra*. We quote from the opinion of the court delivered by Holmes, J., for it is particularly applicable to the facts in this case, and answers some of the arguments made here: "The argument is, that, inasmuch as the plaintiffs knew of the existence of a principal before the contract was made, and then were contented to accept a written agreement which on its face bound the agent, they must be taken to have dealt with, and to have given credit to the agent alone; just as, upon a subsequent discovery of the undisclosed principal, they might have determined their right to charge him by a sufficient election to rely upon the credit of the agent. We are of the opinion that the plaintiff's knowledge does not make their case any weaker than it would have been without it. Whatever the original merits of the rule, that a party not mentioned in a simple contract in writing may be charged as a principal upon oral evidence, even where the writing gives no indication of an intent to

bind any other person than the signer, we cannot reopen it, for it is as well settled as any part of the law of agency. (Citing cases.)   And it is evident that words which are sufficient on their face, by established law, to bind the principal, if one exists, cannot be deprived of their force by the circumstance that the other party relied upon their sufficiency for that purpose.   Yet that is what the defendant's argument comes to.   For the same parol evidence that shows the plaintiff's knowledge of the agency may warrant the inference that the plaintiffs meant to have the benefit of it and to bind the principal.   The only reasons which have been offered for the admissibility of oral evidence to charge the alleged principal confirm this conclusion.   *   *   *.   The most that could fairly be argued in any case would be, that, under some circumstances, proof that the other party knew of the agency, and yet accepted a writing which did not refer to it, and which in its natural sense bound the agent alone, might tend to show that the contract was not made with anyone but the party whose name was signed; that the agent did not sign as agent, and was not understood to do so, but was himself the principal.   But these are questions of fact, and, as a matter of fact, it is obvious, and it is found, that the defendant was the principal, and that the contract was made with her.   The objection that two persons cannot be bound by the same signature to a contract, if sound, would be equally fatal when the principal was not known.   There is a double obligation, although there can be but one satisfaction.   Our decision is in accordance with a thoroughly discussed case which went to the Exchequer Chamber, and with the statement of the law by Mr. Justice Story there cited.   (Calder v. Dobell, L. R. 6 C. P. 486; Story Agency, Sec. 160a.)"

That the rule applies to a contract made and executed by one partner, when acting for the firm and within the scope of the partnership business, is equally well settled.  (30 Cyc. 485; 9 Ency. of Ev., 473;  Brewing Co. v. Hawke, 24 Utah, 199, 66 Pac. 1058;  Dreyfus & Co. v. Union Nat. Bank, 164

Ill. 83, 45 N. E. 408; Carson et al. v. Byers et al., 67 Ia. 606, 25 N. W. 826; Kitner v. Whitelock, 88 Ill. 513; White Mountain Bank v. West et al., 46 Me. 15; Beckwith v. Mace, 140 Mich. 157, 103 N. W. 559; Berkshire Woolen Mills v. Juillard, 75 N. Y. 535, 31 Am. Rep. 488; Stillman v. Harvey, 47 Conn. 26; 22 Ency. Law, (2nd Ed.) 161-164.) It is contended that the conversations at the time the contract was made were inadmissible, on the ground that agency on the authority of an agent cannot be proved by the declarations of the alleged agent. But it was competent to prove the transaction, to ascertain whether E. I. Crable acted for the firm or on his own behalf. Whether there was a firm, and whether E. I. Crable had authority to act for it, "would, perhaps," as said in the Michigan case of Beckwith v. Mace, *supra*, "affect the validity of his attempt to bind others, but the evidence offered was admissible to show the nature of the contract actually agreed upon." In that case the evidence had been excluded, and for that reason the judgment was reversed. Here the evidence was admitted, and properly so, for it explained the transaction and tended to show that the contract was made for the partnership. The fact of the partnership was shown by other evidence, and this contract was such as to come clearly within the partner's authority.

As above indicated, we think the evidence sufficient to justify the trial court in finding that E. I. Crable, in making the contract for the use of the teams, was acting for the firm of which he was a member, that it was a partnership contract, and created a firm obligation. The amount of the judgment indicates that the plaintiff was only allowed the rent of the teams, with interest, after deducting the credit given for the hay.

The only other question in the case relates to the attachment proceedings. As grounds for attachment it was stated in the affidavit "that the defendants are about to remove their property out of the jurisdiction of the court, with intent to defraud their creditors; that defendants are about to dis-

pose of their property, with the intent to defraud their creditors; that defendants fraudulently contracted the obligation for which suit is about to be brought; and that defendant, J. J. Crable, is a non-resident of the State of Wyoming."

E. I. Crable and J. J. Crable filed separate motions to quash the writ of attachment, supported by their respective affidavits, denying the truth of the grounds mentioned in the affidavit for attachment, except the non-residence of J. J. Crable. As to that ground it was moved that the allegation of non-residence be stricken from the affidavit as immaterial. It would certainly be an unusual proceeding to strike from a party's affidavit any matter therein contained. An entire affidavit might, perhaps, be stricken from the files, good and sufficient reasons appearing therefor, and it is proper to move for the discharge of an attachment on the ground that the affidavit is insufficient. But we do not understand it to be proper to strike out the statements contained in the affidavit, or any of them, for the reason that they are immaterial or disclose no ground for attachment. It is probable, however, that the question was presented upon the motions to discharge the attachment, whether the non-residence of one of the partners, the other being a resident, constituted a ground for attachment of the property of the partnership, or the individual property of the non-resident partner. Counsel for plaintiffs in error state in their brief that the question was presented.

The evidence shows that J. J. Crable was a non-resident of the state, and it is not contended that the evidence sustains either of the other alleged grounds for attachment. It is contended for defendants, plaintiffs in error here, that the non-residence of J. J. Crable was not a sufficient ground for attaching either his individual property or the property of the partnership, since he was only liable, if at all, as a member of the partnership. We think it unnecessary to decide that question, for it appears that after the judgment was rendered an order was entered upon the application of the defendants, J. J. Crable & Son and J. J. Crable, that upon

their giving a bond as provided by law for stay of execution, in the sum of $2,700, to be approved by the clerk of the court, execution on said judgment be stayed for ninety days as to the parties giving the bond, and that the property attached be released; the order providing that such bond should be given under the statute relating to appeals.   It is stated in the brief of counsel for plaintiffs in error that after the judgment had been entered the attached property was released upon bond being given.   If the bond was given as provided in the order authorizing it, it would bind the parties to pay the amount of the judgment and costs, if the judgment be affirmed in whole or in part, or if the proceedings in error be dismissed.   (Comp. Stat., 1910, Secs. 5116 and 5117.)

It would not be a forthcoming bond provided for in Section 4855 Compiled Statutes. That section requires the sheriff to deliver the property attached to the person from whose possession it was taken, upon his executing, with sufficient surety, of an undertaking to the plaintiff, to the effect that the parties to the same are bound in double the appraised value of the property, that the property or its appraised value in money shall be forthcoming to answer the judgment of the court in the action.   The statute relating to stay of execution in case of appeal provides that no proceeding to reverse, vacate or modify a judgment of the District Court shall operate to stay execution until the party against whom the judgment was made shall file a written undertaking with sureties to be approved by the court, or judge, or the clerk of the court; that when the judgment directs the payment of money, the undertaking shall be in such sum as fixed by the court or judge to the effect that the plaintiff in error will pay the condemnation money and costs, if the judgment be affirmed in whole or in part, or if the proceedings in error be dismissed.   (Comp. Stat., Sec. 5116.)   And it is further provided that such undertaking shall operate as a stay of execution for the period of ninety days from the date it is filed in the clerk's office, whether any proceedings to reverse,

vacate or modify the judgment shall have been taken or not, and, if within said period the party shall have commenced his proceedings in error, then the undertaking shall operate as a stay of execution until the cause is finally determined by the Supreme Court. (Id. Sec. 5117.) To give a mere forthcoming bond under Section 4855 no order of the court is necessary, nor is it necessary in such case for the court to fix the amount thereof; that is fixed by reference to the amount of the appraised value of the attached property. It appearing that a bond to stay execution under the statute relating to appeals was authorized by the order of the court, on the application of certain of the defendants, and that when given the attached property was ordered released, and, by admission of counsel, that a bond was given and the property released, without anything to show that it was merely a forthcoming bond, we are at liberty to assume, and must do so, we think, that the bond so given was that authorized by the court's order, viz.: a bond to stay execution pending proceedings in error, obligating the parties to pay the judgment, if affirmed. This seems to take every question as to the attachment out of the case. The attachment is not needed to confer jurisdiction of the person of J. J. Crable, for he entered his personal appearance in the cause by pleading to the merits, and participating in the trial. The discharge of the attachment is not necessary, for the property has been released upon the giving of the bond aforesaid; and to hold that the court erred in denying the motions to dissolve would not relieve the parties from the payment of the judgment, which we think must be affirmed, or their liability to pay the same under the bond given to stay execution. E. I. Crable disclaimed, upon the trial, any interest in the attached property, testifying that it all belonged to his father, J. J. Crable. So far as he is individually concerned, therefore, he is not interested at this time in the result of the attachment. There is nothing to show that the firm is not a party to the bond, and we have a right to assume that it is, since the court's order provided that

upon the bond being given by the firm and J. J. Crable execution should be stayed and the attached property released, and it is admitted that upon giving bond the property was released.   The plaintiffs in error are not in a position, therefore, at this time, to demand a consideration of the alleged error in refusing to dissolve the attachment.

For the reasons stated, the judgment will be affirmed.

SCOTT, C. J., and BEARD, J., concur.