## D. J. Fair v. The Citizens' State Bank, of Arlington.

### No. 346.* (59 Pac. 4½.

Partnership—*Negotiable Paper—Indebtedness.* While negotiable paper made in the name of one partner, when his name is not also that of the firm, is not ordinarily binding upon the partnership, yet such paper, taken when the obligation was incurred by the partnership and upon its credit, will be regarded as merely collateral, and the other partner will be held liable upon the original consideration.

Error from Reno district court; F. L. Martin, judge.  Opinion filed November 21, 1899.  Affirmed.

*C. M. Williams*, for plaintiff in error.

*H. Whiteside*, for defendant in error.

The opinion of the court was delivered by

Milton, J. : The record presents three cases, which were tried as one in the district court of Reno county, two being actions in replevin and one for conversion, the subject-matter of all of which was a number of promissory notes belonging originally to D. J. Fair & Co., a partnership composed of D. J. Fair and George M. Schurr.  They were conducting a lumber and grain business at Abbyville, Kan., for about three years prior to February 20, 1895, at which date the partnership was dissolved by mutual consent, Fair remaining in control of the business and succeeding to the ownership of all the property of the firm, including its notes and accounts.  While the partnership existed Schurr had the entire management of its affairs, and prior to its formation he managed the

*Petition for order to certify denied by supreme court January 6, 1900. — Rep.

business at that place for Fair. It seems to have been understood between the partners that the banking transactions of the firm should be with the Valley State Bank, of Hutchinson. In 1892 and 1893, and after the partnership was formed, Schurr borrowed various sums from the defendant in error, giving his individual notes therefor. At such times he stated that the money was "needed to tide over collections," or "needed in the business." Checks for the proceeds of two of these notes were deposited by Schurr in the Valley State Bank to the credit of D. J. Fair & Co., and such checks were thereafter returned to the Arlington bank. In August, 1892, the defendant in error, by its president, deposited with Schurr, at Abbyville, $200 in currency, to be used in cashing checks at that place for the convenience of the bank's customers, Schurr giving his demand note therefor, as a memorandum of the transaction. Four months later the bank's president, observing that the money was not being called for as anticipated, proposed to take it up and surrender the demand note. Schurr then said to him, "We have used that in our business ; we have bought wheat with it, and propose to pay interest on it as a loan from that date." It was so arranged and the bank retained the note. Renewals of the note and partial payments thereon followed until in March, 1894, when Schurr, representing that the firm needed $400 with which to pay for wheat theretofore stored with it, began the transactions whereby the notes in controversy were given as collateral security to the individual notes of Schurr for loans made by the bank.

The evidence on behalf of the plaintiff tended to prove that he had no knowledge whatever respecting the transactions whereby such notes were indorsed by

Schurr and delivered as collateral security to the defendant bank.   On the part of the defendant, the evidence tended to prove that such transactions were always regarded by the bank officers as transactions with the firm of D. J. Fair & Co., and that the loans were made upon the credit of the firm and for its use and benefit, and that in fact a great part, if not all, of the proceeds of the loans made to Schurr at the times the collateral notes were delivered were used in partnership business.   At the times the actions were commenced the defendant bank held a note of Schurr for $647, with certain notes of D. J. Fair & Co. as collateral thereto, and it had during the preceding year collected some of the collateral notes deposited with it at various times by Schurr, and had applied the proceeds upon his notes.   There was no direct evidence of fraudulent conduct on the part of Schurr in respect to the partnership affairs.

The court instructed the jury at great length, covering fully all features of the controversy, and refused to give any of the instructions asked for by the plaintiff or the defendant.   The trial court's theory is well expressed in the following instruction given to the jury :

"The jury are instructed further that if you find from the evidence that Schurr was general manager and a partner of the firm of D. J. Fair & Co., and as such charged with the duties of raising money for the firm and paying debts, and went to defendant and represented that he wanted to borrow money to assist collections of the firm or to buy property for the firm, or to refund money of other persons used by the firm, or pay the firm debts, and for the purpose of borrowing the money offered his individual note with collateral security, the last payable to the firm, duly indorsed by the firm, and the bank on the strength of his said note and the said collateral loaned the money

in good faith, believing it was to be used for such part-
nership purposes, in that event the plaintiff cannot re-
cover the possession or value of any of the collateral
notes, so transferred, until the entire debt evidenced
by the individual note of Schurr is paid, regardless of
the fact whether the said money so loaned was used in
the partnership business or not, and regardless of the
state of his account with the firm, and regardless of
whether the representations were true or false.''

Separate verdicts were returned in each case for the
defendant, and judgment was entered accordingly.
The verdict and judgment, being based on conflicting
evidence, must stand, unless it appears that the court
erred in the admission or the exclusion of testimony,
or in giving or refusing to give instructions.   The ver-
dicts are equivalent to findings that the money was
borrowed by Schurr from the bank for the firm of
D. J. Fair & Co. upon the firm's credit, and that it
was loaned to the firm upon the firm's credit by the
bank.   It follows that the debt evidenced by the note
of Schurr was a firm debt.   The present action is not
upon such note, and it was clearly competent for the
bank to defend against the plaintiff's action by show-
ing the real nature of the transactions upon which it
relied as a defense.   *Prima facie*, Schurr's note bound
himself as an individual only ; while *in fact*, as found
by the jury, the transactions wherein he gave his note
bound the firm of Fair & Co.   It was for the jury to
determine, under proper instructions, whether the
money was borrowed by and loaned to the firm and
upon its credit, or whether the sole credit was given
to Schurr.   The important question is not who gave
the note, but, rather, who created the debt; that is,
the real nature of the contract of indebtedness, of
which Schurr's note is an evidence.   Such questions
are set at rest by the general finding of the jury.

The plaintiff in error contends that the following proposition of law governs in this case:

"Negotiable paper made in the name of one partner, when his name is not also that of the firm, is not, as a general rule, binding upon the partnership." (17 A. & E. Encycl. of L. 1027.)

This rule is supported by many authorities which are cited in the notes, but it is too narrow to cover the facts presented by the record before us. The rule contended for was sufficiently embodied in the instructions given, but the court, as we think properly, also embraced in its instructions the proposition which is thus stated on page 1029 of the same volume:

"Individual paper of one partner, taken when the obligation was incurred by the partnership or upon its credit, will be regarded as merely collateral, and the other partners will be held liable upon the original consideration."

The same doctrine is thus stated by Bates:

"Where the individual paper of one partner is taken, yet if the sale was made to and upon the credit of the firm, the other partners will be liable for the original consideration as for money lent or goods sold, although they are not liable upon the paper, which is merely collateral." (Law of Partnership, § 440.)

In the case of *Hoeflinger v. Wells*, 47 Wis. 628, 3 N. W. 589, the trial court sustained a general demurrer to the plaintiff's complaint, wherein it was alleged that one Stafford borrowed from the plaintiff on account of and for the use of the firm of which he was a member a certain sum of money, and that such loan was evidenced by Stafford's individual note, and that the money so borrowed was expended for the use of the firm. The supreme court reversed the order of the

trial court sustaining the demurrer, and in its opinion said :

" In our view of the construction which must be given to the allegation as to the borrowing of the money, the giving of the individual note of one of the partners for the money borrowed by the firm would be no bar to a recovery against the firm after the note became due and remained unpaid.

" If upon the trial the plaintiff can show that the money was borrowed for the firm, that he was at the time advised that it was for the firm, and that he loaned it to the firm and upon its credit — and, as we construe the allegations of the complaint, they are sufficient to admit such evidence — then the mere taking of the individual note of the one partner for the money so loaned will not defeat the action.   The taking of such note may be evidence tending to show that the money was not loaned to the firm, and that the sole credit was given to Stafford ; but it is not conclusive of that fact ; and if the jury or the court should find as a fact that the money was borrowed by and loaned to the firm, and upon its credit, then the taking of the individual note of one member of the firm would not be a payment of such firm debt, unless it was affirmatively shown that such note was taken in payment of the same." (Citing numerous supporting decisions.)

Complaint is made of the court's refusal to permit the plaintiff to testify that D. J. Fair & Co., as a firm, had no business transactions with the bank at Arlington, and that he as one of the partners never authorized Schurr to transact business of any kind in the name of or for the firm with that bank, and that he had no knowledge of the fact that Schurr had borrowed money of the defendant in the name of the firm or had transferred any of the firm notes to the bank.   An examination of the record indicates that the plaintiff actually testified concerning the matters just stated,

and we think that no substantial error was committed in the respect named.

Plaintiff in error also claims that the court erred in permitting the witness Schurr to answer a question as to whether or not a statement made by the preceding witness concerning certain transactions was substantially correct. We think the question was improper and that the court should not have permitted it to be answered over the objection of the plaintiff; but as the witness thereafter testified fully concerning the trnsactions referred to in the question it does not appear that the plaintiff was harmed by the error. The judgment of the district court will be affirmed.