(February 26, 1923.)

MARGARETA AMUNATEGUI, Plaintiff, v. SPOKANE CATTLE LOAN COMPANY, a Corporation, Defendant.

SPOKANE CATTLE LOAN COMPANY, a Corporation, Cross-complainant and Respondent, v. GUILLERMO BILBAO COMPANY, a Copartnership, GUILLERMO BILBAO, BEGNINO BERMENSOLA, MARGARETA AMUNATEGUI, Cross-defendants, and VICTOR YTURRI, as Administrator of the Estate of BENITO AMUNATEGUI, Deceased, Cross-defendant and Appellant.

[214 Pac. 211.]

PARTNERSHIP—SURVIVING PARTNER—RIGHT TO MORTGAGE PROPERTY OF PARTNERSHIP—INDIVIDUAL NOTES—PARTNERSHIP INDEBTEDNESS.

1. Where the proceeds of notes executed by one partner, in favor of a bank, bearing only his name without the firm name, were deposited to the partnership checking account, checked out by partnership checks, treated by the bank and the individual partners as partnership funds, the partnership receiving the benefits therefrom, and the notes being charged to the partnership account by the bank, such notes became an obligation of the partnership and it was liable thereon.

Publisher's Note.

1. Liability of partnership on note executed in name of single partner, see note in Ann. Cas. 1912A, 618.

2. A surviving member of a partnership has full power to control and dispose of the firm assets for the purpose of winding up its affairs and may pledge or mortgage its property to secure its existing indebtedness.

APPEAL from the District Court of the Third Judicial District, for Elmore County. Hon. Charles F. Reddoch, Judge.

Action to foreclose chattel mortgage. Judgment for cross-complainant. *Affirmed.*

J. G. Watts, for Appellant.

In the absence of an agreement between the partners upon the subject, the death of a partner dissolves the firm. (30 Cyc. 620.)

The surviving partner must settle the affairs of the partnership without delay, account with the executor or administrator, and pay over such balances as may from time to time be payable to him, in right of the decedent. (C. S., sec. 7660.)

In the absence of any provision in the partnership articles on the subject, the survivor has no authority to continue the business, as distinguished from winding it up. If he does continue it, he alone is liable for debts incurred. (30 Cyc. 636.)

One member of a partnership after dissolution cannot bind the partnership except so far as necessary for winding up the business. (Lindley on Partnership, 2d ed., p. 525.)

The surviving partners may not continue the business, except with the consent of the executor or administrator (in this case the widow), and the approval of the probate court. (*McElroy v. Whitney,* 12 Ida. 512, 88 Pac. 349.)

E. G. Davis, for Respondent.

After dissolution a partner can bind the partnership by any act appropriate for winding up partnership affairs or

---

2. Position and powers of a surviving partner in partnership realty, see notes in 27 **L. R. A.** 350; 28 **L. R. A.** 129.

completing transactions unfinished at dissolution. (Sec. 5847–1.a C. S.)

As against the heirs, devisees and creditors of a deceased partner, the legal title to firm assets vests in the surviving partners, who are given the exclusive right to the possession and control of the partnership assets, for the purpose of paying the partnership debts and disposing of the effects of the concern for the benefit of themselves and the estate of the deceased. (20 R. C. L. 995, 996.)

For the purpose of winding up partnership affairs, a surviving partner has the power to borrow money and give a pledge or mortgage of the partnership assets. (20 R. C. L. 997.) And when such transfer is made in good faith it is effectual against all the other creditors, as well as against the representatives of the deceased partner. (*Bohler, Huse & Co. v. Tappan,* 1 Fed. 469; *First Nat. Bank v. Parsons,* 128 Ind. 147, 27 N. E. 486; *Bell v. Hepworth,* 134 N. Y. 442, 31 N. E. 918, 12 L. R. A. 781; *Burchinell v. Koom,* 8 Colo. App. 463, 46 Pac. 392; Id., 25 Colo. 59, 52 Pac. 1100.)

The right of a surviving partner to sell, mortgage and dispose of the assets, and apply them according to his own discretion and judgment, in the payment of debts, has been repeatedly recognized. (*Williams v. Whedon,* 109 N. Y. 333, 4 Am. St. 460, 16 N. E. 365; *Fitzpatrick v. Flannagan,* 106 U. S. 648, 1 Sup. Ct. 369, 27 L. ed. 211; *Emerson v. Senter,* 118 U. S. 3, 6 Sup. Ct. 981, 30 L. ed. 49; *Durant v. Pierson,* 124 N. Y. 444, 21 Am. St. 868, 26 N. E. 1095, 12 L. R. A. 146; *Patton v. Leftwich,* 86 Va. 421, 19 Am. St. 902, 10 S. E. 686, 6 L. R. A. 569; *First Nat. Bank v. Parsons,* 128 Ind. 147, 27 N. E. 486; *Krueger v. Speith,* 8 Mont. 482, 20 Pac. 664, 3 L. R. A. 291; *Smith v. Phelan,* 40 Neb. 765, 59 N. W. 562; *Roach v. Brannon,* 57 Miss. 490; *Johnson v. Berizheimer,* 84 Ill. 54, 25 Am. Rep. 427; note, 65 Am. Dec. 295.)

Where the legal representative of a deceased partner, and all the beneficiaries of the estate, consented to the continued employment of the partnership property in the business of the partnership, subsequently carried on by the surviving

partners, they cease to have a lien upon the property as against the subsequent creditors of the concern. (*Hoyt v. Sprague,* 103 U. S. 613, 26 L. ed. 585; 20 R. C. L. 990, 991.)

The business of a firm having been continued after the death of one of its members precisely as before, the representative of the deceased member taking the benefit of his interest, the firm is not to be deemed dissolved by his death. (*Butler v. American Toy Co.,* 46 Conn. 136; *Nave v. Sturges,* 5 Mo. App. 557.)

A partnership undergoes dissolution on the death of a partner (C. S., secs. 5843–5846); but a partnership is not terminated on dissolution; it continues until the winding up of partnership affairs is completed. (Sec. 5842, C. S.)

BUDGE, C. J.—On or about October 5, 1917, Benito Amunategui, Guillermo Bilbao and Begnino Bermensola formed a copartnership to engage in the sheep business, known as Benito Amunategui Company. Benito Amunategui had theretofore been engaged in that business and was the owner of some sheep and the necessary equipment used in connection with that business. Bilbao and Bermensola purchased an equal interest in the sheep and outfit owned by Amunategui by giving him their notes and making small payments in cash. After the partnership had thus been organized and the interest of each party fixed at an equal one-third, of which fact there is no denial, the three partners, on November 1, 1917, went to the Commercial Savings Bank at Mountainhome and each partner executed his individual note for $5,000 each to the bank. On the same day the bank entered these three notes in its liability ledger under the name of Benito Amunategui Company and the proceeds of the notes, with other moneys, aggregating the sum of $16,815.76, were deposited to the credit of the partnership at that bank, subject to check. On December 28, 1917, the partnership was credited with $2,000 the proceeds of a note signed by Benito Amunategui, individually, in favor of the bank. On April 8, 1918, the partnership bor-

rowed $1,000 from the bank, the note being signed in the name of the partnership. This amount was also credited to the partnership checking account.

It appears from the record that while four of these notes were signed by the individual members of the partnership they were entered on the liability ledger of the bank under the name of the partnership, the proceeds were credited to the checking account of the partnership and checks were drawn against that account by the partnership for partnership purposes. On April 12, 1918, Benito Amunategui died. On June 18, 1918, $3,000 of the partnership indebtedness to the bank was paid. This consisted of the note for $2,000 signed by Amunategui on December 28, 1917, and the note for $1,000 signed by the partnership on April 8, 1918. This payment was made with partnership funds. In the fall of 1918 the amount of the partnership indebtedness to the bank was $15,000 evidenced by the three $5,000 notes, which, with interest, amounted to $16,350.18. At this time, the bank being unable to carry this indebtedness, a loan was negotiated for the partnership from the Spokane Cattle Loan Company, respondent, for the last-mentioned amount, which sum was transmitted to the bank. It appears at this time, that the bank, of its own volition, changed the name of the partnership on its books, by drawing a line through the name Benito Amunategui Company and writing in the name Guillermo Bilbao Company and the account was carried in the latter name thereafter. A chattel mortgage covering all of the property owned by the former partnership was made by the Guillermo Bilbao Company to the Spokane Cattle Loan Company to secure the payment of $16,350.18. It will therefore be seen that the proceeds of the loan from the Spokane Cattle Loan Company were used exclusively to pay the existing debt of the partnership to the bank and that the partnership indebtedness was renewed thereby. It also appears that all moneys thereafter deposited with the bank were deposited in the name of Guillermo Bilbao Company and all partnership checks were drawn against that account. There were no articles of copartnership and the business of

the partnership was conducted as theretofore but under the name Guillermo Bilbao Company. The notes and mortgage given to the Spokane Cattle Loan Company were renewed from time to time in the name of the latter partnership, the last renewal being made on Sept. 7, 1920. The Spokane Cattle Loan Company, in December, 1920, deeming itself insecure, commenced summary proceedings to foreclose its chattel mortgage on the personal property of the partnership. An injunction was applied for by Margareta Amunategui, widow of Benito Amunategui, which was granted and resulted in the sheep and equipment being returned to the partnership. After the commencement of this action, one, Victor Yturri, was appointed administrator of the estate of Benito Amunategui, and, on motion was substituted as plaintiff in the action. Respondent answered the complaint and thereupon a receiver was applied for and appointed, who thereupon took over the sheep and equipment. A cross-complaint was filed by respondent for the foreclosure of its mortgage. An answer was filed to this cross-complaint and a trial was had upon the cross-complaint and the answer thereto. Judgment of foreclosure was awarded to the cross-complainant, the receiver was discharged and the property sold under the foreclosure proceedings. This appeal is from the judgment.

The contention of Margareta Amunategui is based upon the theory that her husband was the owner of one-third of all the partnership property; that it was community property; that there were no debts against the partnership property at the time of his death; that she did not join, neither did the estate of her deceased husband join, in the execution of the notes and mortgage given to the Spokane Cattle Loan Company, or their renewals, and that her interest and the interest of her deceased husband's estate in one-third of the partnership was superior to any lien of the Spokane Cattle Loan Company upon any of the partnership property.

The court found: "That on the 7th day of September, 1920, the Guillermo Bilbao Company by Guillermo Bilbao gave to the cross-complainant a certain chattel mortgage

covering the sheep and camp equipment belonging to the partnership known at that time as the Guillermo Bilbao Company, and that this mortgage was the last of a serial of renewals dating back to the original mortgage given on the 21st day of November, 1918.''

This finding, we think, is supported, without serious conflict, by the testimony. The change of the name of the partnership by reason of the death of one of the partners, under the facts disclosed by the record, would not necessarily render invalid the lien created by the mortgage, providing the indebtedness was that of the partnership theretofore existing. The change in the name was made by the bank of its own volition, but the indebtedness continued to be that of the original partnership.

Both the indebtedness incurred and the execution of the notes and chattel mortgage antedated the enactment of C. S., sec. 5837, and therefore the same has no application to this case.

The court further found that the estate of Benito Amunategui was a member of the partnership which was stated under the name of Benito Amunategui Company and later became known as Guillermo Bilbao Company, at the time of the execution of the original notes and chattel mortgage. That Benito Amunategui was a member of this partnership up to the time of his death is admitted. The evidence that the estate was a member of this partnership is conflicting, but there is some evidence to support this finding. While it may be true that upon the death of Benito Amunategui the partnership was dissolved, nevertheless it existed for the purpose of winding up the partnership affairs and the title to the partnership property was vested in the surviving partners with the power to borrow money and give a pledge or mortgage for the repayment thereof, upon the partnership assets, for existing partnership indebtedness. (20 R. C. L., sec. 234, p. 997.)

The general rule would seem to be that surviving partners may transfer the personal property of the partnership by way of pledge or mortgage to secure the existing debts of

the partnership and when such transfer is made in good faith it is effectual against all other creditors as well as against the representative of the deceased partner. (30 Cyc. 624; *Bohler, Huse & Co. v. Tappan,* 1 Fed. 469; *Burchinell v. Koom,* 8 Colo. App. 463, 46 Pac. 932; Id., 25 Colo. 59, 52 Pac. 1100; *Bell v. Hepworth,* 134 N. Y. 442, 31 N. E. 918; *First Nat. Bank of Peru v. Parsons,* 128 Ind. 147, 27 N. E. 486.)

A partnership being dissolved by the death of one of the partners, the survivor has the entire legal right to all of the assets of the firm for the purpose of winding up the affairs of the partnership. He has the right to dispose of them as he pleases; to settle all debts due to or from the concern; to make any compromises deemed necessary, and to turn the assets into an available and distributable form. (*Shields v. Fuller,* 4 Wis. 102, 65 Am. Dec. 293.) He also has the right to secure extension of credits by renewals, or by pledge or mortgage of personal property to secure payment of partnership indebtedness and to transfer the indebtedness from one creditor to another for the benefit of the partnership. In the instant case the indebtedness for which the notes and mortgage were given by the surviving partners was not the creation of new indebtedness but to secure the indebtedness already existing.

The affairs of the partnership in the instant case were continued by the surviving partners after the death of Benito Amunategui and no question was raised by the surviving widow or steps taken to wind up the partnership affairs until the respondent instituted its summary proceedings in foreclosure, at which time the widow of the deceased partner made the claim that the $15,000 borrowed from the Commercial Savings Bank on November 1, 1917, was a loan made to the partners individually and was not a transaction binding the partnership; that at the time of the death of her husband the partnership was free from debt. She further contends that at the time the loan was made by the Spokane Cattle Loan Company and the notes and mortgage given to secure the same, it was not an indebtedness of the partner-

ship but an indebtedness of the individual members thereof; that she did not join, neither did the estate of her deceased husband, in the execution of the notes or mortgage and that the same was given without her knowledge or consent, which being true, her one-third interest in the property of the partnership was not subject to the mortgage lien. While it is true that the individual members of the firm each signed a note for $5,000 to the Commercial Savings Bank, the proceeds of the notes were immediately credited to the checking account of the partnership and were treated by the bank and by each individual member of the partnership as a partnership transaction and these notes were paid by the proceeds of the loan from the Spokane Cattle Loan Company. The relation of the individual members of the partnership and the partnership was of such a nature, we think, as would constitute this loan as a partnership rather than an individual loan. This being true, even though the individual members of the partnership signed the respective notes, if it is clear that the loan so made was a partnership loan and used for the benefit of the partnership and so intended, it became such and the partnership is bound and its property liable for the payment of the indebtedness. (*Hoeflinger v. Wells*, 47 Wis. 628, 3 N. W. 589; *Fair v. Citizens' State Bank*, 9 Kan. App. 779, 59 Pac. 43; *Mills v. Riggle*, 83 Kan. 703, Ann. Cas. 1912A, 616, 112 Pac. 617; *First Nat. Bank of Dixon v. Spangler*, 49 Cal. App. 133, 192 Pac. 874; *Michigan Sav. Bank v. Butler's Estate*, 98 Mich. 381, 57 N. W. 253; *Beckwith v. Mace*, 140 Mich. 157, 103 N. W. 559; *Carter v. Mitchell*, 94 Ky. 261, 22 S. W. 83; *Salt Lake City Brewing Co. v. Hawke*, 24 Utah, 199, 66 Pac. 1058; *Kennedy & Shaw Lumber Co. v. Taylor*, 3 Cal. Unrep. 697, 31 Pac. 1122; *Reynolds v. Cleveland*, 4 Cow. (N. Y.), 282, 15 Am. Dec. 369; *Smith v. Collins*, 115 Mass. 388; *Maffet & Rhoads v. Leuckel*, 93 Pa. 468.)

While other errors are assigned and have been considered, a discussion of them is not necessary to the disposition of this case.

The judgment is affirmed and costs awarded to respondent.

McCarthy and Wm. E. Lee, JJ., concur.