JAMES A. SHATTUCK v. J. E. CHANDLER, *as Assignee, etc.*

1. PARTNERSHIP—*Authority of Partner—Assignment.* One partner has no authority to make a general assignment of the firm property for the benefit of the creditors of the partnership without the assent of his copartners.

2. ——— *Assignment by Surviving Partner.* A surviving partner may make a general assignment of the partnership property for the benefit of the creditors of the firm, in the absence of any statute prescribing the manner of closing up the partnership estate.

3. ——— *Settlement of Partnership Estates.* Article 2, chapter 37, of the Compiled Laws of 1885, provides for the winding-up and settlement of partnership estates, and such provision precludes the settlement of partnership estates in any other manner.

*Error from Phillips District Court.*

ACTION to recover upon certain promissory notes. The opinion states the material facts. Trial at the March term, 1887, and judgment for plaintiff *Chandler*, as assignee of the firm of Pierpont & Tuttle. The defendant *Shattuck* brings the case here.

*Don Carlos & Son,* for plaintiff in error.

*A. G. & W. H. McBride,* for defendant in error.

Opinion by CLOGSTON, C.: This was an action upon a large number of promissory notes made payable to Pierpont & Tuttle, and guaranteed by the firm of Shattuck & Bowers in these words: "For value received, I hereby guarantee the payment of this note according to the terms thereof, waiving demand, notice, and protest.— SHATTUCK & BOWERS." The evidence shows that Pierpont & Tuttle were a manufacturing firm, located at Bushnell, Illinois, and that Shattuck & Bowers resided in Phillips county, Kansas, and were engaged in the sale of agricultural implements. Certain agricultural implements furnished by Pierpont & Tuttle were sold by Shattuck & Bowers, and the notes sued on were taken in payment therefor; said notes being made payable to Pierpont & Tuttle, and before delivery to them were guaranteed, as above stated. In answer to the petition the defendant alleged, among other defenses, that the plaintiff was not the assignee of Pierpont & Tuttle, and that he had no right or authority to bring the action; and also alleged that Pierpont & Tuttle had failed to collect the notes when the same were due and payable; that the makers of the notes were solvent at that time, and afterward became insolvent and non-residents of Kansas.

The plaintiffs offered in evidence the notes sued on, and the deed of assignment made in Illinois by Tuttle in the firm-name of Pierpont & Tuttle; also a deed of assignment by Tuttle as the surviving partner of Pierpont & Tuttle. Said last deed of assignment, in addition to a general assignment of all the property of the firm of Pierpont & Tuttle, ratified the first deed of assignment and all the doings and proceedings had thereunder by the plaintiff as such assignee. Both of these assignments were objected to, and the objection overruled, and were admitted in evidence. The first deed was objected to upon the ground that one of several partners has no authority, without the consent of the other partners, to make a

general assignment of the partnership property. The plaintiff contends that the deed of assignment is *prima facie* good, and it devolved upon the defendant to show that Pierpont did not consent to the assignment, and that unless it was at least shown that he objected to the assignment, the assignment must be held good. In this we do not agree with the plaintiff. Where an assignment is made by one partner, his right to make that assignment depends upon the consent of his copartner; and to give him authority to make it, he must in addition show that his partner consented thereto, or show such a state of facts from which the court could presume assent; or show that the partner was absent from the country, and that therefore his assent could not be procured; or some other state of facts that would show to the court that the partner making the assignment had authority, either by reason of the articles of partnership or by the fact that his being managing agent of the partnership, or some such fact from which the court could say that the assignment was authorized by the partnership. No such proof was made in this case, and we think in the absence of such proof the assignment offered in evidence was absolutely void. (See Burrill on Assignments, 5th ed., §§ 68–88; *Loeb v. Pierpont & Tuttle*, 58 Iowa, 469; *Lowenstein v. Flaurand*, 82 N. Y. 494; *Haggerty v. Granger*, 15 How. 243; *Dunklin v. Kimball*, 50 Ala. 251; *Sloan v. Moore*, 37 Pa. St. 217; *Graves v. Hall*, 32 Tex. 665; Story on Partnerships, § 101; Parsons on Partnerships, p. 166.) This doctrine is now almost universally acknowledged to be the rule.

The second assignment offered in evidence presents a more difficult question. In many of the states the doctrine is held that a surviving partner cannot make a general assignment, and in these states the theory upon which the decisions were rendered is that at the death of one partner the surviving partner becomes trustee of the partnership estate, and that he has no power to transfer the trust so created to another trustee. This seems to be the doctrine held in New York. (*Nelson, Executor, v. Sutherland, Assignee*, 43 Sup. Ct. N. Y.

327; *Loeschigk v. Hatfield,* 51 N. Y. 660; *Cushman v. Addison,* 52 id. 628; also, *Tiemann v. Malliter,* 71 Mo. 512; *Vosper v. Kramer,* 31 N. J. Eq. 420.) On the other hand, it has been held by some of the states that the surviving partner may make a general assignment of a partnership; and to this effect are numerous decisions, among which is *Emerson v. Senter,* 118 U. S. 3, in which case the court held that the surviving partner could make a general assignment. The court said: "The right to do so grows out of his duty, from his relations to the property, to administer the affairs of the firm so as to close up its business without unreasonable delay." This seems to be the settled doctrine of the supreme court of the United States, and should be followed unless there is some statute making a different rule. This assignment was made under the laws of Illinois, and should be interpreted thereunder; but in this case no statute of Illinois was offered disclosing what provisions had been made in that state by statute for the winding-up of partnership business; and in the absence of any showing of this kind, we must presume that the statute of Illinois is like that of Kansas. This brings up the question, is there any statute in Kansas that conflicts with the rule laid down by the supreme court of the United States in the last case cited? Article 2, chapter 37, of the Comp. Laws of 1885, provides for the winding-up and settlement of partnership estates. This provides for the appraisement of partnership property, and that the property shall remain in the possession of the surviving partner, and if he sees fit to continue its management, and the disposing of the partnership assets and the payment of the partnership debts, he may do so upon condition that he give a bond for the faithful performance of the duties imposed; and the power is given the probate court to cite him, after the giving of such bond, to an accounting, and to adjudicate upon such accounts, as in the case of an ordinary administrator, and for an action upon the bond in case of his failure to faithfully administer the partnership estate; and upon his refusal to give the bond and take charge of the partnership property, it becomes the duty of the administrator of

the deceased partner's estate to assume the management of the same and to settle it up.   By this statute ample provisions are made for the closing-up of a partnership estate, either by the surviving partner, or by the administrator of the deceased partner's estate.   We think that the legislature by this provision intended to provide a trustee to close up the partnership upon the death of a member of the firm, and that the statute creates a trust in the surviving partner which he has no power to transfer to another except as it is transferred by his refusal to administer upon the partnership estate, in which event it is transferred by operation of law to the administrator of the deceased partner's estate.

It was said in *Carr v. Catlin*, 13 Kas. 393, in speaking of this class of administrators:  "He is neither more nor less than a special trustee as to this property and this class of debts." The rule is that where a form of procedure is provided by statute, and the manner of doing a particular act or thing is pointed out, it precludes the doing of it in any other manner or form. If the surviving partner under our statutes may transfer his trust to an assignee, then the assignee would close up the entire partnership business in the court having jurisdiction of the assignment and estate thereunder, and would be entirely free from the jurisdiction of the probate court, and the statute above cited would be without any force or effect.   Did the legislature intend that this statute might be regarded, or not, at the pleasure of the surviving partner?   We think not. This means of winding up a partnership business has been prescribed by the legislature, and in the absence of any proof of the statutes of Illinois to the contrary, we must presume that this is the manner of closing up partnership estates in that state.   We therefore think the court erred in permitting the second assignment to be given in evidence, as it gave the plaintiff no authority or right to commence the action.

As this case goes back for a new trial, it may be proper to say that we think the notes sued on in this action being guaranteed by the defendant, made him jointly liable with the makers of the notes upon default of payment, and he

could be sued with the makers or without them. His liability is just the same as if he had indorsed the notes in blank, waiving demand, notice and protest; and no default of the payees or holders of the notes in not bringing an action to collect the same, could excuse the guarantors from payment. If they had desired to protect themselves they could have paid the notes and then had their remedy against the makers, and thereby secured themselves against loss.

It is therefore recommended that the judgment of the court below be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.