No. 19,958.

THE BIG FOUR IMPLEMENT COMPANY and THE TOWNLEY METAL HARDWARE COMPANY et al., Intervenors, *Appellees*, v. MAGGIE KEYSER et al. and G. A. SIEMERS et al., Intervenors, *Appellants*.

### SYLLABUS BY THE COURT.

1. PARTNERSHIP.—*Death of Partner—Dissolution of Partnership—Winding up the Business.* While death works a dissolution of a partnership the community of interest subsists for some purposes long enough to enable the survivors to wind up and settle the affairs of the partnership.

2. SAME — *Duty of Surviving Partner — Winding up Business within Reasonable Time.* A surviving partner who undertakes to wind up the business of the firm is required to do so within a reasonable time and in the way most advantageous to those interested in the estate, and, after paying the debts and the expenses of closing the business, to distribute the assets among the surviving partners and the representative of the deceased partner.

3. SAME—*Manner of Winding up Business—Discretion of Surviving Partner.* The surviving partner is vested with some discretion as to the manner of winding up the business and the time to be taken for that purpose.

4. SAME—*Manner of Sale of Partnership Assets—Goods May be Added to Stock of Merchandise.* A sale of the goods and assets of the partnership may be made in bulk or in the usual course of trade, whichever may be the most advantageous to the interested parties, and if sold at retail some goods may be added to the stock in order to make it more salable and to facilitate the advantageous disposition of the whole; and when this is done in good faith the estate will be liable for the goods purchased as well as the expenses of winding up the business.

5. SAME—*Claims of Creditors ,Contributing to Partnership Assets—How Paid—Preference.* When the business is continued by the surviving partner longer than is necessary, with the consent of the interested parties, including the representative of the deceased partner, creditors who contributed to the stock and assets of the estate are entitled to payment of their claims in preference to any of the surviving partners or the representative of the deceased partner.

Appeal from Clay district court; SAM KIMBLE, judge. Opinion filed November 11, 1916. Modified and affirmed.

*C. Vincent Jones, F. B. Dawes, R. C. Miller, F. L. Williams,* and *James L. Hogin,* all of Clay Center, for the appellants.

*Park B. Pulsifer, Charles L. Hunt,* both of Concordia, *H. W. Stackpole,* and *W. T. Roche,* both of Clay Center, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by creditors to subject a fund to which they had contributed to the payment of their claims.

J. F. Keyser and his sons, W. D. and W. O. Keyser, were engaged in the hardware business at Wakefield. On July 22, 1911, J. F. Keyser died, leaving as his only heirs his widow, Maggie Keyser, the two sons mentioned, and two daughters who had not yet reached majority. On August 5, 1911, the widow was appointed administratrix of the estate, and on August 28, 1911, W. D. Keyser qualified as surviving partner, giving bond with G. A. Siemers and D. H. Faulkner as sureties. The property of the deceased consisted of little more than his interest in the partnership business. W. D. Keyser had put into the business about $700, and W. O. Keyser had contributed nothing except his services in carrying on the business for which wages were paid. The invoice of the stock of goods taken after the death of J. F. Keyser, showed that there were goods on hand of the value of $8342.22, cash $1378.03, notes aggregating $1173.50, and open accounts due the firm $1876.56, the entire stock and assets of the firm amounting to $12,770.31. The firm was then indebted to the extent of $6072.44. Sometime after W. D. Keyser took charge of the stock he paid off this indebtedness, but instead of selling the stock in bulk he conducted the business substantially as it had been done prior to the death of his father, and his brother W. O. Keyser continued to assist in carrying on the business as he had formerly done. Some new goods were purchased from time to time to take the place of those that were sold, and in transacting the business checks and other documents were signed sometimes in the old firm name and sometimes as Keyser & Sons. Mrs. Keyser and her daughter as well as the families of both sons were supported from the proceeds of the store. In July, 1913, W. D. Keyser gave notice that he would

make a settlement of the partnership estate, and did file what purported to be a final account of his administration; but shortly afterwards he disappeared and settlement was not made. Mrs. Keyser, as administratrix of the estate of the deceased, also gave notice of a final settlement of the estate, which was not made. After the abandonment of the business by W. D. Keyser, Mrs. Keyser and her son W. O. Keyser executed an assignment of all the stock and assets of the firm to William Jevons as trustee for the creditors, and this instrument was signed by "W. O. Keyser," "Maggie Keyser" and "Keyser & Sons by Maggie Keyser, a member of said partnership." Under the assignment Jevons took possession of the store, sold goods, bought some new goods, and also collected outstanding accounts and paid debts. After he had been in possession of the property about two months the probate court directed the administratrix to take charge of the store and the assets of the estate, and thereupon Jevons surrendered possession of the goods and all of the assets of the business to her. An inventory was then made and a little later a sale of the goods was effected, the proceeds from which, with the cash on hand and open accounts, amounted to $4851.60. From this amount the administratrix was directed to make a payment of $513.20 (but whether it was upon claims or fees is not disclosed), leaving a balance of $4348.40. She was about to distribute this balance among the heirs of the deceased when this action was brought.

G. A. Siemers and D. H. Faulkner intervened in the action, claiming the rights of creditors. The surviving partner had induced them to sign a note with Keyser & Sons upon the representation that he desired to pay off the claims of the minor heirs. Instead of doing that, it is alleged that the surviving partner placed the money obtained upon the note in his banking account and drew it out from time to time in carrying on the hardware business. The Wakefield bank, in which the $1500 was deposited and from which it was drawn, also intervened with a view of obtaining an allowance for the same claim.

Upon the testimony the court, after allowing the claims of the creditors, held that the fund derived from the sale of the goods should be subjected to the payment of the creditors, and

a receiver was appointed to make distribution. The claims of Siemers and Faulkner as well as that of the bank of Wakefield were denied; and these intervenors and the Keysers appeal from the judgment rendered.

It is contended that the surviving partner and those associated with him could not bind the estate for the goods purchased and the liabilities created after the death of J. F. Keyser. It is true, as the defendants contend, that death works a dissolution of the partnership, but the community of interest subsists in a way for the time necessary to wind up the partnership business. In section 344 of the seventh edition of Story on Partnership, it is said:

"Although, as to future dealings the partnership is determined by the death of one partner, yet for some purposes it may be said to subsist, and the rights, duties, powers and authorities of the survivors remain; so far as is necessary to enable them to wind up and settle the affairs of the partnership."

The settlement of the partnership estate devolves primarily on the surviving partner where he elects to undertake it, and if he does not, then upon the administratrix of the estate. (Gen. Stat. 1909, § 3467.) It was the duty of the surviving partner who assumed the task in this case to wind up the business within a reasonable time and in the way most advantageous to those interested in the estate, and after paying the debts and the expenses of winding up the business, to distribute the assets among the surviving partners and the representative of the deceased partner. The surviving partner is vested with some discretion as to the manner of closing the business and the time to be taken for that purpose. He may continue the business long enough to close it up without sacrificing the assets and long enough to make an advantageous disposition of the stock. (*Frey v. Eisenhardt,* 116 Mich. 160.) The statute contemplates that considerable time may be necessary, as the bond required of the surviving partner provides that the partnership business shall be wound up and the debts paid and the surplus fund distributed within two years, unless a longer time is allowed by the court. (Gen. Stat. 1909, § 3468.) In some cases a bulk sale of merchandise may be the better method, while in others a sale of the goods in the usual course of trade may be to the advantage of the interested par-

ties. In the latter case some articles may be purchased and added to the stock in order to make it more salable and to facilitate an advantageous disposition of the whole. When this is done in good faith the goods purchased as well as the reasonable expenses incurred in carrying on and winding up the business may be paid from the funds derived from the sale. (*Central Trust & Safe Deposit Co., &c. v. Respass,* 112 Ky. 606; *Calvert v. Miller,* 94 N. Car. 600; *Hoyt v. Sprague,* 103 U. S. 613.) The surviving partner is not warranted in unduly prolonging the business of the partnership, and if it be continued longer than necessary the representative of the deceased partner may obtain a remedy by applying to the court to secure a closing up of the estate and a distribution of the funds derived from it. In this instance the business was continued a long time—probably longer than was necessary to pay the debts and close up the partnership business. In speaking of a surviving partner it has been said:

"It is his duty to collect the claims as far as possible, to pay off the debts, to sell out the stock of goods to the best advantage; and, while he may continue the business for a short time, in disposing of the stock on hand, yet he is not authorized, without the consent of the representative of the deceased partner, to continue the firm business indefinitely, nor to embark in new enterprises. (*Didlake, Administratrix, v. Roden Grocery Co. et al.,* 160 Ala. 484, 489.)

Here the business was continued with the acquiescence and coöperation not only of the surviving partners, but also of the widow, who was the legal representative of the deceased partner. The length of time necessary to wind up the partnership affairs in the way most conducive to the interest of all is not shown in the record. It was continued for some considerable time after the debts which were due when J. F. Keyser died had been paid. In one sense a new partnership was established which included all the interested parties. In buying goods and in transacting business it appears that the name of the old firm was used part of the time, and some of the time the name of Keyser & Sons was employed, and the widow in executing the trust deed mentioned signed the name of Keyser & Sons and designated herself as a member of the partnership. Whether it be treated as an undue continuance of the business by the surviving partner, or as a new partnership, it is clear that the creditors, whose goods and assets were put

into the business and contributed to enlarge the fund, are entitled to be paid from the fund in preference to any of the partners or the representative of the deceased partner. Since all the interested parties, including the representative of the estate of the deceased partner, were engaged in the business when the goods were added to the stock, it is only equitable to pay first the debts contracted in the operation of the business, and which entered into and became a part of the fund that is to be distributed.

It appears that the two daughters of the deceased were minors when the debts in question were contracted, but their interests in the partnership estate were represented by their mother as administratrix, and as we have seen she participated in carrying on the business in which the indebtedness was incurred. If they have suffered any loss through improvident action or through improper administration, they can look to the bond given by the administratrix.

The intervenors, Siemers and Faulkner, are also entitled to the status of creditors and to share in the fund. The note signed by them, and for the payment of which they had been obliged to provide, was cashed at the bank and the proceeds of it used in the partnership business. While the surviving partner induced them to execute the note in order that the proceeds might be used to pay the claims of heirs, the testimony clearly shows that the money obtained on the note was used in carrying on the partnership business. They are therefore entitled to prorate with the other creditors in the fund which is the subject of controversy. These intervenors instead of the bank are entitled to share in the fund as the bank had previously taken the obligation of these parties in place of the original note.

The judgment will be modified so as to allow the intervenors, Siemers and Faulkner, to share in the distribution of the fund with other creditors, and in all else the judgment is affirmed.