No. 25,114.

Charles E. Sutton, *Appellee*, v. J. D. Wynn, *Appellant*.

SYLLABUS BY THE COURT.

1. Partnership Contract—*Hog-raising Enterprise—Termination of Contract —Delay of Defendant in Disposing of Partnership Property after Dissolution of Partnership.* The record of an action between partners for an accounting after dissolution of their partnership venture in the raising and marketing of hogs, examined, and no error discerned in setting an eight-months' limit to the time the liquidating partner should be allowed to fit for market and sell the hogs, nor in charging the liquidating partner with the expense of feeding the hogs for the period in which he thereafter wrongfully neglected to dispose of them, nor in any of the incidental and minor matters complained of and noted in the opinion.

2. Same—*Cross Appeal—Claim for Damages.* On the cross appeal the record examined, and *held* that plaintiff's action was for an accounting only, and no error transpired in the trial court's refusal to take cognizance of his claim for damages founded on a belated theory of defendant's conversion of the partnership property.

Appeal from Douglas district court; Hugh Means, judge. Opinion filed June 7, 1924. Affirmed.

*George K. Melvin,* and *R. E. Melvin,* both of Lawrence, for the appellant. *Ord Clingman,* and *C. A. Smart,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an action for an accounting between partners in a hog-raising enterprise.

The plaintiff partner supplied defendant with a number of Berkshire hogs, which were to be considered as the foundation herd, and which were to continue to be the property of plaintiff and to be returned to him at the dissolution of the partnership. The defendant partner was to care for and feed these hogs at his own expense, and the partners were to divide the net profits from the sales of the increase of the foundation herd. With this foundation herd were other hogs which were to be weighed and charged to defendant at a stipulated but disputed price. The bargain of the partners was set down in a written contract dated June 6, 1918, which, among other matters not now material, provided for settlement of accounts between the partners every three months, and—

"This contract shall remain in force from year to year hereafter, subject to the right of either party hereto to terminate the same on two months' notice in writing to the other party. . . . Final settlement shall be made, unless the parties otherwise agree, by a public sale upon the premises of all the property in which parties hereto are jointly interested. Except that the foundation herd shall always remain the property of said Sutton and he shall be entitled to immediate possession thereof at any time upon the termination of this agreement."

The main features of the contract went into effect shortly after it was executed, but certain parts of it—the weighing of the foundation herd, the registration and identification of the increase, the quarterly settlements, and perhaps other phases of it—were indifferently conformed to, or not complied with at all. For these or other reasons, the partnership venture was neither successful nor satisfactory, and defendant, on January 1, 1919, gave written notice to plaintiff that on March 1, 1919, the foundation herd would be returned, and the other stock disposed of at auction unless some otherwise satisfactory settlement were effected.

Sometime after March 1, 1919, the foundation herd was returned to plaintiff, but it was not until December, 21, 1920, nearly a year and ten months thereafter, before defendant disposed of the other hogs, and neither before nor after such belated disposition of what had been the partnership herd of hogs was there any accounting had between the parties touching their business affairs. Hence this lawsuit.

Plaintiff claimed a large balance due him from defendant. The latter answered, denying that he owed plaintiff anything, and that on striking a balance there would be a considerable sum due him. Defendant also filed a cross petition, setting up various items, most of which were extraneous to the partnership but proper enough to be determined in this litigation under our code.

The trial court made informal findings of fact and of law too long for repetition, holding after March 1, 1919 (date of termination of the partnership by defendant's written notice to plaintiff), defendant had a reasonable time in which to fit the partnership herd of hogs for sale and to sell them, and that the extreme limit of such reasonable time was eight months, November 1, 1919, and that defendant was entitled to his proper expenditures for feed and the like down to that time. The court also found the total value of the partnership assets based upon the original invoice, plus sales of hogs to November 1, 1919, plus sales of hogs after that date, to be $6,363.67; cost of feed to November 1, 1919, $3,179.25; expense of sale, $10; balance of assets over cost of feed and expense, $3,174.42; and that plaintiff was entitled to half of that sum, $1,587.21, less certain items amounting to $196.60 allowed to defendant on his cross petition; and judgment for the net result, $1,390.61, was entered in plaintiff's behalf.

Defendant appeals, inveighing against the judgment on various grounds, but most urgently because he was not allowed his expense of feeding the hogs until November 21, 1920, when he sold them.

It is the duty of a liquidating partner to wind up the partnership affairs and dispose of the partnership assets and divide the net proceeds, and this duty he must discharge with reasonable diligence. (*Hogendobler v. Lyon*, 12 Kan. 276; *Implement Co. v. Keyser*, 99 Kan. 8, 161 Pac. 592, L. R. A. 1917 C 166, and note; *Gilmore v. Ham*, 142 N. Y. 1, 40 A. S. R. 554, and note; 30 Cyc. 659 *et seq.*; 20 R. C. L. 977-979.) He has some discretion in his choice of time and season to market partnership property, but where the partnership assets are live stock, particularly hogs, the reasonable time which the liquidating partner may take to fit them for the market and sell them is necessarily brief, otherwise the "assets" would consume in feed all they were worth, perhaps more; and the testimony in evidence accords with reason and common sense and fully justified the trial court's finding that eight months was the maximum time that could reasonably be allowed to dispose of the hogs; and no error was committed in disallowing defendant's claim for ex-

penses of feed for the thirteen months and twenty-one days' delay thereafter before the defendant disposed of the property. The excuse for such unreasonable procrastination in winding up the affairs of the partnership, that plaintiff did not contribute in advance his share of the trifling expense of advertising and selling the hogs, is unavailing and worthless. Defendant had partnership property and partnership funds from which to meet such expense, and the sale came off eventually without this insignificant contribution from plaintiff and could have been held just as readily a year or a year and a half earlier.

Error is assigned because defendant was given no allowance for "feeding, care and keep" of the hogs, other than the foundation herd, during the early period of the partnership, between the time defendant came into possession of them and the time when they were invoiced, weighed and charged to him. There was nothing to prevent defendant from weighing the hogs as soon as he took charge of them. Plaintiff testified that defendant was to blame for this delay, and the trial court may have believed him. But if there was any fault in plaintiff because he was not sooner on hand to participate in the weighing, some item of damage to defendant might have been proved and allowed on that account, but no clear basis can be seen for charging plaintiff with the care and feed after the partnership business had begun. There was a sharp dispute as to what the invoice price of these hogs should have been, and this dispute was settled in defendant's favor; but no satisfactory evidence upon which a proper charge for the period of feeding, care and keep of the hogs before they were weighed and invoiced can be gleaned from the record. Certainly the services of defendant's son in their care and keep furnished no basis therefor, and the feeding appears to have been pasturage, and what that was reasonably worth does not appear. The court discerns no reversible error on this point.

Error is urged because the court held that defendant's letter to plaintiff, dated January 1, 1919, "terminated the partnership." The court did not so hold. Because of that letter the partnership was terminated two months thereafter, on March 1, 1919. The letter set in motion the process for its termination in the mode prescribed by the parties.

A final complaint is made because of the rejection of some items in defendant's cross petition. Some of these were allowed and some

rejected. Defendant contends that because the court allowed some of these items it should have allowed the others. He argues:

"Either several of those items for pasturage, etc., allowed by the court, should not have been allowed, or these should have been allowed."

This is a curious logic which cannot be approved, and no error is disclosed in the matter presented.

Under this assignment also the defendant harks back to the partnership controversy and contends that the court should have allowed damages because of plaintiff's "obstinacy" in refusing to procure registration of the hogs under the contract. Plaintiff's testimony on that point reads:

"Since Wynn has had charge of these hogs he has tried several times to register them, but because of my objections he has been unable to do so. I don't know how many hogs out of this firm represented by Sutton and Wynn he has been unable to register because of my objections and protest, but it was practically the whole herd. That wasn't Wynn's agreement. He was to make out the papers and I was to sign them. I refused absolutely to allow Wynn to register these hogs only through the channels agreed on and I refused to register. Those hogs were in my name and I wouldn't authorize Wynn or anyone else to sign my name to those papers."

Apparently this testimony satisfied the trial court that the failure to have the hogs registered was no fault of plaintiff, and no error is disclosed in such solution of the point involved.

The record discloses no error of which defendant can justly complain.

The plaintiff presents a cross appeal based upon the contention that defendant converted the herd of hogs to his own use and was therefore chargeable with their full value on March 1, 1919. While defendant's delay of one year, nine months and twenty days in disposing of the partnership hogs was inexcusable, and the trial court very properly imposed upon him the expense of feeding them after the first eight months following the termination of the partnership, the court does not find in the record any persuasive evidence, certainly no conclusive evidence, that defendant at any time willfully intended to convert the property to his own use. Furthermore, while the pleadings in full are not reproduced, the action was for an accounting and did not sound in tort for conversion, and plaintiff's long delay in filing this action is itself some refutation of any well-founded theory of defendant's conversion of the property. The cross appeal is not sustained.

The judgment is affirmed.