# Richmond.

## Annie A. McGee and Alice L. Russell v. W. H. Russell's Executors and Others.

March 22, 1928.

Absent, Burks, J.

PARTNERSHIP—*Surviving Partner Executor of Deceased Continuing Business to Avoid Loss not Liable for Appraised Value at time of Dissolution of the Partnership by the Death of the Deceased Partner.*—The instant case was a suit by an executor, who was a son and partner of the deceased, against his sisters. The will of the deceased gave his son $15,000.00, "in value of my two-thirds interest, in moneys and accounts due to the" partnership. Testator had in his lifetime given to his daughters $15,000.00 each. The question at issue between the parties was the liability of the executor as partner under section 42 of the Uniform Partnership Act (Code of 1924, section 4359 [42]). The sisters claimed that the surviving partner, without their consent and against their wishes, continued the business, and that in consequence of this action on his part the value of the share of the deceased partner in the business must be ascertained as of the date of the dissolution of the partnership by the death of their father, whereas for the executor and partner it was contended that section 42, so relied upon, was not applicable because the business was not so continued under any of the conditions set forth in section 4359 (41) (subsections 1-6), or in section 4359 (38) (2b) but was continued as authorized by section 4359 (30) and section 4359 (33) of the Code of 1924, merely for the purpose of closing up the partnership business and distributing its assets. The assets of the partnership consisted largely of materials for the manufacture of wagons. All of the parties recognized that it would be disastrous to offer these unfinished parts of wagons for sale at public auction. The executor, therefore, continued the business to work off this material. There was no suggestion of any fraudulent conversion or proof of any sacrifice of the assets. The commissioner and the lower court took the view that the surviving partner only continued the partnership business in order to avoid a destruction of the value of the assets, and there was no reason to doubt that this was the best course to

pursue. The Supreme Court of Appeals took the same view of the case and held that the surviving partner was not liable for the appraised value of the assets at the death of his father and partner.

Appeal from a decree of the Circuit Court of Mecklenburg county. Decree for complainants. Defendants appeal.

*Affirmed.*

The opinion states the case.

*E. P. Buford* and *Sterling Hutcheson*, for the plaintiffs in error.

*Irby Turnbull*, for the defendants in error.

PRENTIS, P., delivered the opinion of the court.

Without undertaking to state in detail every fact shown by this record, the fundamental facts appear to be these:

About 1890 Charles H. Russell and his son, W. H. Russell, both of whom are now dead, formed a partnership for the purpose of manufacturing wagons. The name of the partnership was C. H. Russell & Son, the plant was located at Clarksville, Virginia, and the father, C. H. Russell, owned a two-thirds interest, while the other one-third was owned by his son, W. H. Russell. Charles H. Russell died December 14, 1919, testate. The executors named in his will were his son, W. H. Russell, and William Leigh, of Danville, but William Leigh died before the testator, so that upon his death W. H. Russell took charge of his separate estate as his executor, and of the partnership property as surviving partner.

The will made several specific bequests, among them one to his son, W. H. Russell, of $15,000.00 "in value of my two-thirds interest, in moneys and accounts due to the firm of C. H. Russell & Son, and in stock and material and machinery in hand belonging to said firm, said fifteen thousand dollars in value to be set apart and delivered to him out of my said interest in the money and accounts due to said firm, and in the stock and material on hand, and machinery belonging to said firm, the property given him under this clause of my will to be his absolute property." The testator had in his lifetime given to his daughters, Annie A. McGee and Alice L. Russell, each $15,000.00, and so it is apparent that this bequest to his son was for the purpose of producing equality among his children. He directed that the residuum of his estate be equally divided among his three children, his son and his two daughters.

There are many letters in the record showing intense enmity of the brother towards his two sisters. This enmity is expressed in the most unrestrained language, and perhaps accounts for this unfortunate controversy. This rancor, so plainly manifested, however, supplies no facts which are helpful in determining the rights of the parties, and we shall make no further allusion to it.

The legal question involved and the point emphasized by the appellants is based upon section 42 of the Uniform Partnership Act (Acts 1918, page 541; Code, section 4359 [42]), quoted in the margin.*    Relying

*"*Section 4359 (42) Rights of Retiring or Estate of Deceased Partner when the Business is Continued.*—When any partner retires or dies, and the business is continued under any of the conditions set forth in section forty-one (1, 2, 3, 5, 6) (section 4359 (41) (1, 2, 3, 5, 6) of this Code) or section thirty-eight (2b) (section 4359 (38) (2b) of this Code), without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor

thereon, the appellants claim that the surviving partner, without the consent of his sisters and against their wishes, continued the business, and that in consequence of this action on his part the value of the share of the deceased partner must be ascertained as of the date of the dissolution of the partnership by Charles H. Russell's death; whereas, for the appellee it is contended that section 42, so relied upon, is not applicable, because the business was not so continued under any of the conditions set forth in section 41 (1, 2, 3, 5, 6), or section 38 (2b), and they further maintain that the business of the copartnership was only continued as authorized by sections 30 and 33 of the Uniform Partnership Act, and merely for the purpose of closing up

an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by section forty-one (8) of this act."

"*Section 4359 (41) Liability of Persons Continuing the Business in Certain Cases.*—(1) When any new partner is admitted into an existing partnership, or when any partner retires and assignes (or the representative of the deceased partner assigns) his rights, in partnership property to two or more of the partners, or to one or more of the partners and one or more third persons, if the business is continued without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business.

"(2) When all but one partner retire and assign (or the representative of a deceased partner assigns) their rights in partnership property to the remaining partner, who continues the business without liquidation of partnership affairs, either alone or with others, creditors of the dissolved partnership are also creditors of the person or partnership so continuing the business.

"(3) When any partner retires or dies and the business of the dissolved partnership is continued as set forth in paragraphs (1) and (2) of this section, with the consent of the retired partners or the representative of the deceased partner, but without any assignment of his right in partnership property, rights of creditors of the dissolved partnership and of the creditors of the person or partnership continuing the business shall be as if such assignment had been made."

"(5) When any partner wrongfully causes a dissolution and the remaining partners continue the business under the provisions of section thirty-eight (2b) (section 4359 (38) (2b) of this Code, either alone or with others, and without liquidation of the partnership affairs, creditors of the dissolved partnership are also creditors of the person or partnership continuing the business.

its business and distributing its assets. These sections are also quoted in the margin.

There is little difference between the contending parties as to the law, but the controversy arises out of their conflicting views as to the facts.

Adverting now to these facts, it appears that at the time of the death of the elder Russell, the concern owed some debts, had goods ordered which had not been delivered, and had a very large stock of materials on hand, consisting of various unassembled parts of wagons which could be marketed to the best advantage only after they had been assembled and manufactured into wagons. All of the parties recognized the fact that it would be disastrous to offer these unfinished parts of

"(6) When a partner is expelled and the remaining partners continue the business either alone or with others, without liquidation of the partnership affairs, creditors of the dissolved partnership are also creditors of the person or partnership continuing the business."

"*Section 4359 (38) Rights of partners to application of partnership property.*
—* * *

"(2) When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:
*      *      *      *      *      *      *

"(b) The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution, less any damages recoverable under clause (2a II) of this section, and in like manner indemnify him against all present or future partnership liabilities."

*"*Section 4359 (30) Partnership not Terminated by Dissolution.*—On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."

*"*Section 4359 (33) General Effect of Dissolution on Authority of Partner.*—Except so far as may be necessary to wind up partnership affairs or to complete transactions begun but not then finished, dissolution terminates all authority of any partner to act for the partnership.

"(1) With respect to the partners,

"(a) When the dissolution is not by the act, bankruptcy or death of a partner; or

"(b) When the dissolution is by such act, bankruptcy or death of a partner, in cases where section thirty-four (section 4359 [34] of this Code), so requires.

"(2) With respect to persons not partners, as declared in section thirty-five."

wagons for sale at public auction, or otherwise, in bulk. They promptly employed counsel and voluminous correspondence ensued, the purpose of which was to induce an agreement by which the surviving partner would pay to his sisters the value of their interests in the partnership property. For instance, on February 13, 1920, among other things, the attorney for the appellants, after discussing their inability to agree about anything, and putting the blame upon the surviving partner, says: "At the same time, my clients have, as I have gathered their views, been entirely willing to agree upon some settlement by an act *in pais,* to which all of the parties should consent, and to promote an expeditious settlement, to make some little concession to your client. For instance, if such an agreement could be reached, our clients realize that the business of Russell & Son might be taken over by your client and carried on by him as his individual enterprise. We think the business worth something as a 'going concern' and are not disposed to compel him to wind it up as the surviving partner and thus let it expire with a distribution of his assets, if any reasonable agreement to this end were possible. But, to bring about this result, your client must be equally liberal and conciliatory on his part."

In reply to this letter, the attorney for the surviving partner, among other things, wrote: "I think it will take some time to wind up the partnership of C. H. Russell & Son, and since the parties are *sui juris* and brother and sisters, I do think that some plan might be suggested upon which all of them would agree. I realize that the greatest stumbling block in the way of an agreement is the unfortunate relations that have so long existed between my client and his maiden sister. Unless we can reach an agreement, the estate will, of

course, have to be settled and wound up in the usual way."

The correspondence, in much the same spirit, continued between the attorneys until June 3, when there was a conference. On June 5, the attorney for the surviving partner wrote that the proposal made on behalf of his sisters had been rejected by their brother, the surviving partner. Efforts to reconcile the views of the parties continued until the latter part of November, 1920, and shortly thereafter this suit was brought by the executor and surviving partner for the settlement of his accounts and for general directions.

In the interval there had occurred a general business depression, and the prospects of financial success had diminished. Additional parts of wagons which had been missing had been in the meantime bought, and many wagons had been manufactured.

The answer to the bill is general in its form, admits that the surviving partner is entitled to wind up its business affairs, denies that he has any legal right or authority to continue the business after dissolution, so as to change the status of its affairs or create new debts or obligations to be discharged out of its assets, except in so far as may be necessary to wind up its affairs and make distribution of its assets, and prays that the surviving partner may be required to render proper accounts and make legal settlement.

This answer is doubtless sufficient to support the claim now made, but if it had been at that time intended to assert specifically that the surviving partner was then already liable to the appellants for the value of the property as of the date of dissolution, upon the ground that he had taken charge of the business and illegally continued it, there can be hardly any doubt that they would have at that time so asserted. This failure to

make the specific claim which is now insisted on is not alluded to as constituting a bar to the present claim, but only as throwing some light upon the fact to be determined, namely, whether the surviving partner in fact continued the business illegally, or merely operated it as surviving partner and for the sole purpose of winding up its affairs. Immediately after his father's death, W. H. Russell indicated to his sister, Mrs. McGee, unequivocally, that he would not continue the business. The correspondence shows that he recognized that his duty and responsibility as surviving partner required him to wind it up.

The case was referred to a commissioner for a settlement of the partnership accounts, and the position which is taken here for the appellants was there taken; but the commissioner was evidently of opinion that all of the acts of the surviving partner were in good faith and done only for the purpose of closing up the affairs of the partnership. His position was not an easy one. A sale of the materials on hand in bulk would have been disastrous. His own interest as a partner and the one-third interest therein bequeathed him by his father, gave him a five-ninths interest in the concern. He had every motive for conserving the assets and for prudent action.

Exceptions to the commissioner's report were taken, and the trial court agreed with the commissioner.

Taking a general view of the facts as we have indicated them, we discover no good reason for any contrary view. Every proposition of law urged by the appellants may be acceded to, but they are all based upon the averment that the surviving partner, without any agreement on the part of the others interested, continued the partnership business; whereas, under our view of the facts, the surviving partner only continued

the partnership business in order to avoid a destruction of the value of the assets, because driven thereto by the necessities of the situation and because, in his own judgment, formed under the advice of counsel, it was necessary to do so in order to close up its affairs properly so as to make proper distribution of its assets. There is no reason to doubt that that was in fact the best course to pursue, and that it was taken for the purpose of winding up its affairs. Though assumed in argument, there is nothing to show that any different course would have yielded any better results.

Before the final decree, the surviving partner filed a written statement with the commissioner, which if true is quite convincing. He was afterwards sworn as a witness, subjected himself to cross-examination, and offered to submit his books for inspection. There is no allegation or suggestion of any fraudulent conversion, or proof of any sacrifice of the assets. Full and complete inventories were promptly taken, copies thereof sent to all the parties interested, and there is no indication of any concealment at any time.

The appellants, by their counsel, greatly emphasize the fact that the inventory of the stock of unfinished wagon parts, materials on hand and other personal property of the copartnership shows that these were listed at $35,719.56, but the appraisers who made that report stated this therein at the time: "Should same be subjected to sale, there would be a great reduction, due to the fact that wagon parts made at one factory cannot be judiciously used at any other factory. We further think that it would take at least three years to make up and dispose of the stock and this would involve the purchase of a large quantity of other materials and parts." And one of the appraisers testified that if this property had been then sold, it would hardly have

brought more than twenty-five per cent. of this appraisement.

The proper conclusions seem to us to be quite obvious. It would be a great wrong to hold the surviving partner responsible as the purchaser of the property at such an appraisement and under the circumstances shown. It was afterwards sold after proper advertisement, under the order of court in this cause, the sale was confirmed without objection, and the price then paid for it by the surviving partner as the highest bidder therefor is the best evidence of its true value.

We have not deemed it necessary to review the cases or to quote judicial expressions, because the decree complained of on this point—*i. e.,* as to the general powers of a surviving partner— is supported by a perfectly well established rule, which is not embodied in the Uniform Partnership Act, and we deem such repetitions unnecessary. Those who are curious to pursue the subject are referred to the act itself, to *In re Bourne* (1906), 2 Chapter App. 427, 6 Ann. Cas. 33, 20 R. C. L., pages 996, 1001; 3 R. C. L. Supp. 1115, 1118, 4 R. C. L. Supp. 1396; *Crews* v. *Sweet,* 125 S. C. 303, 118 S. E. 613, 29 A. L. R. 43; *Didlake* v. *Roden Grocery Co.,* 160 Ala. 484, 49 So. 384, 22 L. R. A. (N .S.) 907, 18 Ann. Cas. 430; *Big Four Implement Co.* v. *Keyser,* 99 Kan. 8, 161 Pac. 592, L. R. A. 1917C, 169; *Tennant* v. *Dunlop,* 97 Va. 234, 33 S. E. 620; *Moore* v. *Huntington,* 17 Wall. 417, 21 L. Ed. 642.

Complaint is made of the allowance of certain small amounts which the surviving partner charged for several short trips on business for the estate. It would doubtless have been proper to have disallowed this claim, upon the ground that his commissions as executor were ample to cover such expenses, but the matter

is certainly not of sufficient consequence to justify a reversal.

There is also complaint of the allowance of $1,000.00 as a fee to the attorney for the executor. It is said that the executor and surviving partner was fighting his own battle, and hence should pay his own attorney. This fee was allowed and paid several years ago, and certainly under the then existing circumstances, the executor and surviving partner was entitled to have counsel. In view of all the facts, the fee is reasonable. It can hardly be supposed that he has not since then had to pay his personal counsel additional fees, incurred in defending this appeal, for services rendered here, as well as in the later stages of the litigation in the circuit court.

We find no reversible error.

*Affirmed.*