## DAVIS v. HUTCHINSON et al.

Circuit Court of Appeals, Ninth Circuit.
November 12, 1929.

Rehearing Denied December 17, 1929.

No. 5719.

310

Morton E. Stevens, of Fairbanks, Alaska, and Ira Bronson, H. B. Jones, and R. E. Bronson, all of Seattle, Wash., for appellant.

John A. Clark, of Fairbanks, Alaska, and Thomas R. Lyons and Ira D. Orton, both of Seattle, Wash., for appellees.

Before DIETRICH and WILBUR, Circuit Judges, and LOUDERBACK, District Judge.

WILBUR, Circuit Judge. The appellant, acting as administrator de bonis non of the estate of W. W. Pendergraft, and also in his capacity as the administrator of the affairs of the partnership business carried on at Fairbanks, Alaska, by W. W. Pendergraft and John Aldridge, under the partnership name of Pendergraft & Aldridge, and also known as Imperial Cigar Store, brought action to cancel a mortgage given by W. W. Pendergraft, the surviving partner, on November 13, 1920, to the appellee George Hutchinson, as trustee, upon all the real and personal property of the copartnership to secure the payment of $5,500, and for an accounting for all moneys paid on account of said mortgage.

The mortgage was given to secure indebtedness evidenced by the following promissory notes, to wit: A note of October 20, 1916, for $1,000, and interest, in favor of Julius Gius, executed by Pendergraft in his individual capacity; a note dated March 5, 1918, for $900, and interest, executed by the copartnership in favor of Henry Doring; another by the copartnership for $500, and interest, executed August 31, 1920, payable to the First National Bank of Fairbanks, Alaska; another note for $3,000, and interest, executed October 4, 1920, payable on demand to the First National Bank of Fairbanks, Alaska, by the copartnership.

The complaint alleges the insolvency of the copartnership at the time of the execution of the mortgage and that the indebtedness secured by the mortgage was fictitious and fraudulent. These allegations are denied, and there is no finding on the issue of insolvency. By an interlocutory decree, the mortgage was canceled by default as to the payees of the first two notes secured thereby and because the indebtedness to the First National

Bank of Fairbanks secured thereby had been paid. On final hearing as to the accounting a decree of dismissal on the merits was rendered. Appellant, the plaintiff in the court below, appeals from this judgment.

In view of the fact that the interlocutory decree herein canceled the mortgage, the question as to whether or not the surviving partner had power to execute the mortgage becomes relatively unimportant upon the appeal. The indebtedness purporting to be secured thereby to the First National Bank has been fully paid by the surviving partner. If any wrong was committed in making this payment, it was committed by the surviving partner himself, and neither he nor the administrator of his estate could recover from the First National Bank at Fairbanks money paid to it by him on the indebtedness due the bank, in the absence of insolvency of the firm unknown to the surviving partner, or fraud or mistake. 24 C. J. § 1258; Thorsen v. Hooper, 57 Or. 75, 109 P. 388. Nor do we see how the surviving partner, under the circumstances, as trustee for the copartnership, or the appellant as his successor as trustee, could compel the creditor to refund money due to it and paid by the surviving partner. If the partnership assets were incumbered by a valid mortgage, it is clear that such mortgage was entitled to priority of payment from the proceeds of the property so mortgaged. It is in this aspect of the case only that the validity of the mortgage is of any importance in this litigation. As the parties have directed their attention primarily to the question of the validity of this mortgage, we will now consider that question.

In support of the decree we must assume that the court found as a fact that the copartnership was not insolvent. There is no specification of error requiring or permitting a consideration by us of the evidence on that subject. There is evidence of a long-standing indebtedness to the National Grocery Company incurred between 1914 and 1918, and of a disastrous fire in 1919 causing a great loss to the copartnership, but no proof in the record as to the financial standing of the deceased partner, Aldridge. The parties discuss the evidence as to insolvency in their briefs, but appellant states that his principal point is as to the effect of the enactment of the Uniform Partnership Law of Alaska upon the law of Alaska in force at the time of the enactment. In our discussion of the case we will assume that the copartnership was solvent at the time the mortgage in question was executed by the surviving partner, a little over a month after the principal loan secured thereby was made to the partnership.

On October 24, 1920, and shortly after the execution of the last-mentioned note, John Aldridge, one of the copartners, died.

The appellees claim, and the court found, that the mortgage was executed in pursuance of an oral agreement made on October 4, 1920, when Pendergraft secured the loan of $3,000 at the First National Bank, evidenced by the note executed on that day. It appeared that the obligations evidenced by the promissory notes in question constitute all of the obligations of the partnership except an obligation for $19,000 due the National Grocery Company.

On November 15, 1920, Pendergraft fully paid the note of August 31, 1920, for $500, to the First National Bank of Fairbanks. Later, before his appointment as administrator of the copartnership affairs, he had also paid $662.50 on the $3,000 note.

On February 1, 1921, Pendergraft applied for letters of administration of the partnership estate of Pendergraft & Aldridge. Letters were accordingly issued, and Pendergraft qualified as administrator, and after his appointment as administrator of the copartnership he paid the balance of the principal, $2,350, and $154 interest. These payments were all made from the proceeds of the copartnership business conducted by the surviving partner. The above-mentioned mortgage states that the largest part of the income of the parties from the conduct of business consists in the sale of soft drinks, ice cream, candies, cigars, tobacco, and the use of pool tables. By the terms of the mortgage the surviving partner agreed to pay on the mortgage indebtedness at least 10 per cent. of his gross monthly sales. No payments were made on account of the personal note of Pendergraft in favor of Julius Gius except $174, and nothing was paid on the partnership note for $900 to Henry Doring except $81 interest. He neither asked for nor secured the authority of the court to dispose of the partnership property or pay its debts. He carried on the business of the copartnership until he died December 12, 1921. Thereafter, Harry W. Brown was appointed executor of his will and took possession of the partnership estate of Pendergraft & Aldridge and sold all the real and personal property of the copartnership. His report of such sales to the commissioner in probate showed total assets of the copartnership $7,619.82, total liabilities $22,901.75, leaving a deficit of $15,281.93.

On May 14, 1925, Brown was removed from the office of executor and administrator and appellant was appointed in his place and brought this action.

The first question which presents itself is as to the authority of the surviving partner to execute the note and mortgage to the appellee and thus give priority to the claims thereby secured. The Legislature of Alaska in 1917 adopted the Uniform Partnership Law (Uniform Partnership Law of 1917, Laws of 1917, c. 69, p. 159), which provided, among other things, that upon the death of a partner the title to all the partnership property vested in the survivor who was authorized and directed to settle the partnership affairs. Prior to this legislation, the Code of Alaska, adopted in 1906, provided that the administrator of the estate of the deceased partner should inventory the entire assets of the copartnership. Compiled Laws of Alaska 1913, § 1622. If the surviving partner desired to administer the affairs of the copartnership, he was required to file a petition to that effect within five days and execute a bond and qualify as such administrator (Compiled Laws of Alaska 1913, § 1623), whereupon the property was administered in the same manner as other probate estates (Compiled Laws of Alaska 1913, § 1624). See Compiled Laws of Alaska 1913, §§ 1622 to 1628. This system of administering the assets of the partnership in the event of the death of one of the partners followed the plan which was then in force in the states of Maine, New Mexico, Kansas, Missouri, Oregon, and Washington. Woerner American Law of Administration (3d Ed.) § 128, p. 443; section 130, p. 455; Esterly v. Rua (C. C. A.) 122 F. 609; Cook v. Lewis, 36 Me. 340. In these states it has been held that the surviving partner had no authority to dispose of the assets of the copartnership or prefer creditors in the interim between the death of the deceased partner and his appointment by the probate court, and that thereafter, his authority was derived from the laws regulating the probate of estates of a deceased partner. Cook v. Lewis, 36 Me. 340; Putnam v. Parker, 55 Me. 235; Hill v. Treat, 67 Me. 501; Dow v. Simpson, 17 N. M. 357, 132 P. 568; Harrington v. Herrick (C. C. A.) 64 F. 468; Brigham-Hopkins Co. v. Gross, 30 Wash. 277, 70 P. 480; Shattuck v. Chandler, 40 Kan. 516, 20 P. 225, 10 Am. St. Rep. 227; Newhouse v. Heilbrun, 74 Kan. 282, 86 P. 145, 10 Ann. Cas. 955; Harrah v. State, 38 Ind. App. 495, 76 N. E. 443, 77 N. E. 747. The provisions of the Compiled Laws of Alaska, with relation to administration of the estate of deceased persons, prohibit sales of the decedent's property unless authorized by the commissioner (section 1662), and also provides for the payment of claims pro rata (sections 1693, 1704, 1707) with certain priorities

which need not be considered. It is therefore contended that no authority existed on the part of Pendergraft to execute the mortgage in question, or after his appointment to recognize the mortgage or to prefer the claim secured thereby. The appellee contends, on the other hand, that, where the title to the property of the copartnership passes to the surviving partner, and where that surviving partner is given authority to settle the affairs of the copartnership, as provided in the Uniform Partnership Law (Laws of Alaska 1917, p. 169, c. 69, §§ 25, 30), he has a right to prefer claims and dispose of the property in accordance with his own judgment. This is in accordance with the line of decisions arising in the states wherein the surviving partner has the right to title and possession of the partnership property and the right to settle the affairs of the copartnership. Rowley's Modern Law of Partnership, vol. 1, §§ 12, 592, 598, 623, 629, 640; Wharf v. Wharf, 306 Ill. 79, 137 N. E. 446; Re Safady Bros. (D. C.) 228 F. 538, 540; Amunategui v. Spokane Cattle Co., 36 Idaho, 688, 214 P. 211; McGee v. Russell's Executors, 150 Va. 155, 142 S. E. 524; 20 R. C. L. §§ 230, 231; Emerson v. Senter, 118 U. S. 3, 6 S. Ct. 981, 30 L. Ed. 49; 47 C. J. §§ 607, 616, 617. It is therefore argued that, inasmuch as the two systems of administration are entirely inconsistent, the passage of the Uniform Partnership Law by the Legislature of Alaska by necessary implication repealed the law with reference to the administration of partnership estates. To this the appellant replies that, if the act of the Legislature of Alaska has such an effect, it is violative of the act of Congress from which the Legislature secures its authority, and which provides "that all the laws of the United States heretofore passed establishing the executive and judicial departments in Alaska shall continue in full force and effect until amended or repealed by Act of Congress." 37 Stat. L. 512, § 3 (48 USCA § 23).

A decision of the United States Supreme Court (U. S. v. Wigger, 235 U. S. 276, 35 S. Ct. 42, 59 L. Ed. 226) is cited as authority upon the proposition that laws affecting the jurisdiction of the courts of Alaska come within the category of laws which can only be amended or repealed by Congress and not by the Legislature of Alaska. In this connection it should be stated that the Uniform Partnership Law of Alaska (section 37, c. 69, Session Laws of 1917) provide:

"Unless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; provided, however, that any partner, his legal representative, or his assignee, upon cause shown, may obtain winding up by the court."

Before entering upon a discussion of the questions thus presented, it should be observed that repeals by implication are not favored and only occur when there is a direct and unavoidable inconsistency between the old and the new legislation, and also that statutes are to be given a construction which renders them valid as against claims that the Legislature has exceeded its authority rather than one which would render them invalid, if such a construction is reasonably consistent with the purpose of the legislative body. It follows from these principles that the legislation enacted by the Legislature of Alaska should be construed in harmony with the prior legislation, if reasonably possible to do so, and, if not possible, to that extent and only to that extent is there an implied repeal, and furthermore, if the effect of the subsequent legislation is to modify the jurisdiction of the courts in excess of the authority conferred upon the Alaska Legislature by Congress, then such subsequent legislation should be so construed as to avoid that conflict, if it can be reasonably done. It follows that we are not at liberty to fully accept the interpretation placed upon laws relating to the administration of partnership assets either where court authority is required for such administration, or where the surviving partner is vested with the title to the partnership property and the right to administer the same, for we have the duty of reconciling both systems so far as possible. Such powers and duties as are otherwise implied from these two distinct methods of dealing with partnership property must be controlled by express legislation dealing with the subject. In determining the rights and duties of a surviving partner, he must be controlled by specific legislation so far as it applies, and, if that legislation conflicts with an implication arising from such general considerations as the vesting of title in the surviving partner, it must be controlled by specific legislation expressly defining the duties of the surviving partner. There is no inherent inconsistency in providing that the title to the partnership property shall vest in the surviving partner and also requiring him to give a bond for the faithful performance of his duty as surviving partner. He holds the title to the partnership property as a trustee, and there is no reason why he should not be required to give a bond and oath for the faithful performance of his duty as such trustee. There is therefore no difficulty in holding that there is no

inconsistency between the provisions of the laws of Alaska which require that the copartner file a bond, take an oath, and act under letters of administration, and the law which vests title in him for the purposes of such administration. The difficulty here arises in the administration of the partnership property, and the question is whether in such administration the surviving partner has such discretion as the Uniform Partnership Law contemplates, or whether he is bound to follow the procedure outlined in the earlier Alaskan law for the disposition of assets of deceased persons. This question need here only be answered with reference to the particular controversy involved in the situation presented by the record. In this case the only question involved is the question of the right of the surviving partner before his appointment by the court to give priority in the payment of claims and in securing the same, where the estate is not insolvent. The claims involved in this case were preferred claims at the time the surviving partner took out letters of administration if his act in giving the mortgage is sustained.

Assuming that, if there were no legislation subsequent to the Compiled Laws of Alaska leading to a contrary inference, the surviving partner would have no authority to deal so with partnership assets in event of the dissolution of the partnership by the death of one of the partners, we have here, in the later Uniform Partnership Law adopted by the Legislature of Alaska, complete and full authority on the part of the administrator to exercise his discretion in the management and winding up the affairs of the partnership and in so doing to create a preference in the absence of court proceedings. See, as to preference under the common law, 47 C. J. § 616, pp. 1046, 1047. This express statutory authority is not necessarily qualified by the consideration that the surviving partner might be forced later to give a bond and execute an oath and to continue thereafter in the administration of the affairs of a copartnership under the supervision of the probate court in the event that the administrator of the estate or the executor of the will of the deceased partner challenges his authority by filing an inventory of the partnership property. In the case at bar, the estate of the first deceased partner has never been administered in Alaska, and the authority of the survivor and of the executor of his will to administer the affairs of the partnership were not challenged in any way until the present action was brought by their successor. Under such circumstances it has been held in Missouri, under a law similar to Compiled

Laws of Alaska relating to the administration of the partnership estate after death of a partner, that the surviving partner has authority to administer the partnership estate unless and until the administrator of the estate of the deceased partner qualifies and files an inventory which includes the partnership property and thus requires the surviving partner to give bond. Goodson v. Goodson, 140 Mo. 206, 41 S. W. 737, 739. The reasons for that decision would apply here. If, under one line of authorities dealing with the method of administration in vogue under the laws of Alaska previous to the passage of the Uniform Partnership Law, it is held that no authority whatever exists to deal with the partnership property before authorization by the probate court, and if under the other line of authorities dealing with legislation similar to the Uniform Partnership Law it is held that such law would authorize him to deal with the property and fully administer it without any specific authority from the probate court, there is no reason why these two conflicting conclusions based upon such different legislation cannot be harmonized, where the statute expressly provides for both systems, by concluding that, under the Uniform Partnership Law, the surviving partner has complete authority to wind up the affairs of the copartnership unless and until such authority is challenged by the administrator or executor of the estate of the deceased partner, nor is there any reason why the statute requiring the giving of bond, etc., by the surviving partner, cannot be followed in the event that his authority is so challenged as a condition of further continuance of such power.

We have thus far dealt with inferences and incidental results flowing from certain statutory provisions. The statutory provisions themselves are not necessarily in conflict, although the conclusions and incidental results are in direct conflict. We are of opinion that whether or not, under the Compiled Laws of Alaska, the surviving partner was authorized to deal with partnership property before letters of administration were issued to him as such survivor, that under the Uniform Partnership Law of Alaska he is now so authorized, and the previous law is so far modified by this subsequent enactment that the surviving partner is thereby authorized to administer the affairs of partnership as survivor for the purpose of winding it up, without previous court authorization. The surviving partner in this case, while so acting, executed a mortgage upon all the partnership property to secure obligations which he felt it his right and duty to thus secure. The trial

court decided that this mortgage was executed in conformity with a previous oral agreement made on behalf of the copartnership at the time the $3,000 was borrowed. In support of this conclusion the appellee is entitled to all the inferences justly to be drawn from the evidence. We think, however, that, giving to the testimony of Mr. Henderson its full weight, it goes no further than to substantiate an agreement on the part of Mr. Pendergraft to protect the bank which was advancing the money. There was no specific agreement for an immediate mortgage of the assets of the copartnership. While this agreement could not be enforced by the bank to the extent of requiring a mortgage, the surviving partner is entitled to consider the moral obligation growing out of the fact that money was advanced upon a specific agreement to protect the bank against the claims of other creditors to its assets. We are of opinion that the surviving partner did not exceed his powers in executing the mortgage in question, and that the mortgage so executed was valid, and that he had power to make payments thereon.

■■ The next question involved is as to whether the payments made by the surviving partner after he had submitted himself to the jurisdiction of the court and qualified as administrator of partnership affairs were valid without an order of court. Inasmuch as the mortgage covered the entire partnership assets and the money used to pay the mortgagees was derived wholly from the sale of these assets, we do not see how any just complaint can be made of such payments by any creditor not. so secured. The surviving partner continued the business, selling the goods of the partnership in the ordinary course of business and devoted the proceeds, so far as available, for the decrease of the mortgage indebtedness. We have not specifically dealt with the question as to whether or not the assets of partnership after the taking out of letters of administration by the surviving partner must be administered in accordance with the general law affecting probate under the Compiled Laws of Alaska, or whether under such circumstances the surviving partner has complete discretion to deal with the affairs of the partnership subject only to the duty of applying the assets to the indebtedness and turning over to the representatives of the deceased partner his proportion of the balance. We need not decide this question in this case. It is manifest that there is a conflict between the Uniform Partnership Law, which gives the surviving partner complete and entire discretion to wind up the affairs of the partnership, and the Compiled Laws of Alaska, which subordinate that discretion to the probate law and to the judgment of the probate court in case the administrator of the deceased partner inventories the partnership property as an asset of his estate; neither is it necessary to decide the point raised as to the authority of the Legislature of Alaska to legislate with reference to the jurisdiction or authority of the courts established by Congress. As we have construed the Uniform Partnership Law of Alaska, it does not deprive the probate court of the right or power to exercise jurisdiction in the matter of a partnership, where a partner has died. In so far as the Uniform Partnership Law changes the powers and duties of the court in the administration of such estates, the regulation thereof is a matter of practice and procedure subject to the control of the Legislature of Alaska. U. S. v. Wigger, 235 U. S. 276, 35 S. Ct. 42, 59 L. Ed. 226.

Decree affirmed.

DIETRICH, Circuit Judge (concurring in result). I think that the Uniform Partnership Law irreconcilably conflicts with the Compiled Statutes of Alaska. Each is complete in itself, and exclusive respecting the management or administration of partnership property upon the death of one of the partners. If, therefore, the Uniform Partnership Act is valid, it necessarily operates to repeal the Compiled Statutes pro tanto. While, under principle of United States v. Wigger, 235 U. S. 276, 35 S. Ct. 43, 59 L. Ed. 226, the question is not free from doubt, I accept Judge WILBUR'S view that the Partnership Act is valid, and hence concur in affirming the judgment.

LOUDERBACK, District Judge, joins in this opinion.